UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____-CV-_____

Consumer Financial Protection
Bureau,

 Plaintiff,

v.

Freedom Mortgage Corporation,

 Defendant.

_____/

## COMPLAINT

The Consumer Financial Protection Bureau (Bureau) brings this action against Freedom Mortgage Corporation (Defendant or Freedom) under the Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5564(a), and the Home Mortgage Disclosure Act (HMDA), 12 U.S.C. § 2804(b)(1)(B), (d), and its implementing regulation, Regulation C, 12 C.F.R. § 1003, and alleges as follows:

## INTRODUCTION

1. The Home Mortgage Disclosure Act (HMDA) was passed by Congress in 1975 in response to concerns about discriminatory lending and harmful patterns of disinvestment in certain communities by mortgage lenders. A type of sunshine law, HMDA was meant to use transparency and public disclosure as tools to monitor and improve lending practices in the home mortgage market. HMDA and its implementing Regulation C require institutions like the Defendant to collect and report certain data regarding applications for, originations of, and purchases of home-purchase loans, home-

improvement loans, and refinance loans (together, Covered Loans).

2. Today, HMDA data are the most comprehensive sources of publicly available information on the U.S. mortgage market. Federal and state regulators rely on HMDA data to enforce fair lending and other laws. HMDA data provide the public with vital information about their communities and the economic market underpinning the average American consumer's most valuable asset: their home. The Bureau is tasked with enforcing the requirements of HMDA and Regulation C. Vigilant enforcement of HMDA's requirements fosters transparency, accuracy, and accountability in the mortgage market and is an essential component of the Bureau's mission of protecting consumers.

3. Freedom, one of the nation's largest non-bank mortgage lenders, has been required to collect and annually report to the government mortgage loan data under HMDA and Regulation C since at least 2014. In 2019, the Bureau found that Freedom had violated HMDA by intentionally misreporting data concerning borrower race, ethnicity, and sex from 2014-2017. The Bureau agreed to resolve these findings through a consent order (2019 Order) requiring Freedom to pay a civil money penalty, comply with HMDA, and undertake other corrective actions, including developing and improving its HMDA policies and procedures.

4. The 2019 Order did not mark the end of Freedom's HMDA failures. Instead, Freedom's February 26, 2021 submission of its 2020 HMDA data to the Bureau was filled with errors.

5. Freedom's violations continued because of pervasive deficiencies in its policies, procedures and systems to collect and report HMDA data and because, despite knowing its systems were faulty, it failed to implement adequate changes to its HMDA compliance management system to ensure the accuracy of its HMDA data. As a result,

Freedom has violated HMDA, its implementing Regulation C, the CFPA, and the 2019 Order.

6. The Bureau brings this action to stop Freedom's violations of Federal consumer financial law and the 2019 Order and to obtain injunctive and monetary relief.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action because it is "brought under Federal consumer financial law," 12 U.S.C. 5565(a)(1); presents a federal question, 28 U.S.C. § 1331; and is brought by an agency of the United States, 28 U.S.C. § 1345.

8. Venue is proper in this District because Freedom conducts business in this District and has its principal place of business in this District. 12 U.S.C. § 5564(f).

## PLAINTIFF

9. Plaintiff the Bureau is an independent agency of the United States created by the CFPA. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority and is authorized to commence a civil action in federal district court to address violations of Federal consumer financial law, including HMDA and Regulation C. 12 U.S.C. § 5564.

## DEFENDANT

10. Defendant Freedom is a privately-owned for-profit mortgage lender with its principal place of business in Boca Raton, Florida.

11. Freedom is a "depository institution" within the meaning of HMDA, 12 U.S.C. § 2802(3)(B), (5); a "financial institution" within the meaning of Regulation C, 12 C.F.R. § 1003.2; and required to collect, record, and report data on HMDA-covered transactions. 12 U.S.C. § 2803, 12 C.F.R. §§ 1003.4, 1003.5.

12. Freedom must report mortgage loan data under HMDA and Regulation C

because it met all the criteria required by law during the relevant period. 12 U.S.C. §§ 2801–2810; 12 C.F.R. § 1003. Specifically, Freedom (1) as of December 31, 2019, had a branch office in a Metropolitan Statistical Area (MSA) for HMDA-reporting purposes within the meaning of 12 C.F.R. § 1003.2(c)(2); and (2) originated at least 100 closed-end mortgage loans in each of the two preceding calendar years. 12 C.F.R. § 1003.2(g)(2)(ii)(B).

13. Freedom is a "covered person" under the CFPA because, among other things, it engages in offering and providing credit for use by consumers primarily for personal, family, or household purposes. 12 U.S.C. § 5481(5), (6), (15)(A)(1). Freedom is subject to the Bureau's supervisory and enforcement authority under 12 U.S.C. §5514.

14. In 2020, Freedom originated more than 389,000 loans, including home-purchase loan refinances, worth almost $100 billion. Freedom was the third-largest originator (by number of originations) in the country. In addition to the loans it originated, Freedom also reported an additional approximately 389,000 applications and purchased loans.

15. In 2021, Freedom originated more than 360,000 loans, including home-purchase loan refinances, worth almost $90 billion. In 2021, Freedom was the fifth-largest originator (by number of originations) in the country. In addition to the loans it originated, Freedom also reported an additional approximately 379,000 applications and purchased loans.

16. As of September 30, 2022, Freedom's approximate year-to-date total revenues and net income were $1.7 billion and $415 million, respectively. Its total assets were $13.5 billion and $3.1 billion in total equity.

**FACTUAL ALLEGATIONS**

17. In June 2019, the Bureau found that Freedom had violated HMDA by intentionally misreporting certain HMDA fields, including borrower race, ethnicity, and sex, from at least 2014 through 2017. Freedom stipulated to the entry of the 2019 Order, including Paragraph 29, which specifically prohibited Freedom from violating Section 304(a), (b), or (h) of the Home Mortgage Disclosure Act, 12 U.S.C. § 2803(a), (b), and (h), or Sections 1003.4(a)-(b) or 1003.5(a) of Regulation C, 12 C.F.R. §§ 1003.4(a)-(b), 1003.5(a). These provisions expressly prescribe and require covered institutions like Freedom to collect, record, and report home mortgage data to the Bureau. The 2019 Order is in effect through June 2024.

18. On February 26, 2021, Freedom submitted its 2020 HMDA data to the Bureau, reporting on over 700,000 Covered Loans. Freedom's 2020 HMDA data contained widespread and significant errors.

19. These errors included but are not limited to:
    a. improper classification of certain loan applications as "approved but not accepted" that were actually withdrawn, causing errors in other related fields;
    b. errors in entering data related to subordinate lien loans and purchased loans;
    c. loans reported in HMDA that did not meet the HMDA definition of reportable application;
    d. inaccurate purchaser type for tens of thousands of loans;
    e. inaccurate calculations of rate spread, causing errors in other related fields; and
    f. inaccurate data reported for lender credits.

20. In its review of Freedom's submission, the Bureau discovered approximately 51 data errors across seven data fields in its 159 file sample. The error rates in these fields were significant enough to require Freedom to resubmit its 2020 HMDA data.

21. Freedom resubmitted its 2020 HMDA data on September 30, 2021 to correct errors from the previous submission. The revised submission that attempted to correct these errors included changes to almost 20% of all Covered Loans, and changes to over 174,000 data entries in dozens of data fields.

<u>Freedom Failed to Maintain Procedures Reasonably Adapted to Avoid Errors, and Its Errors Were Not Bona Fide</u>

22. Freedom did not maintain a compliance management system with procedures reasonably adapted to avoid HMDA errors.

23. Many errors in Freedom's 2020 HMDA data were caused by widespread, systemic issues and compliance management systems failures, not isolated one-off mistakes. The issues include but are not limited to:

   a. inconsistent or incomplete data entry policies and procedures;
   b. failure to update information in Freedom's internal systems; and
   c. systems-wide data mapping issues.

24. Freedom's own internal audit team, in a review covering the period September 2020 through August 2021 (a period that included both the annual 2020 data submissions and 2021 HMDA data submissions for the first half of the year), also found serious deficiencies in Freedom's HMDA-related processes, procedures, and controls, and assigned an audit rating of "Needs Improvement."

25. Specifically, the internal audit concluded that "steps and operations supporting creation of the HMDA L[oan] A[pplication] R[egister] are missing from or incompletely captured in process documents;" and that "HMDA management reporting is inconsistent in form, content, documentation and in its articulated escalation protocols."

26. Freedom's internal audit also contained a "High Risk" finding due to

Freedom's incomplete HMDA Loan Application Register processes, and the audit team warned that these incomplete processes may result in undetected errors on the annual HMDA data submission, require resubmission, and may result in additional regulatory scrutiny and penalties.

27. At the time of Freedom's 2020 HMDA data submission, Defendant was subject to the Bureau's 2019 Order, which included prohibitions on further violations of HMDA and Regulation C. But Freedom did not have or use an effective system for sampling and validating loan files against the data reported to ensure that that the 2020 HMDA data submission was accurate.

28. The errors in Freedom's 2020 HMDA data submission were therefore not bona fide.

## Count I

*Violations of HMDA and Regulation C*

29. The Bureau re-alleges and incorporates by reference paragraphs 1-28.

30. As implemented by Regulation C, HMDA requires covered institutions to collect, record, and report mortgage-loan data regarding applications for, originations of, and purchases of Covered Loans. 12 U.S.C. §§ 2802(3), 2802(5), 2803; 12 C.F.R. §§ 1003.2 (definition of "financial institution"), 1003.4(a), 1003.4(b), 1003.5.

31. Freedom is required to collect, record, and report data on Covered Loans in compliance with HMDA and Regulation C. 12 U.S.C. §§ 2802(3), (5), 2803; 12 C.F.R. §§ 1003.2 (definition of "financial institution"), 1003.4(a), (b), 1003.5.

32. Freedom collected, recorded, and reported inaccurate HMDA data in violation of HMDA and Regulation C.

33. Between at least January 1, 2020 and December 31, 2020, Freedom did not

maintain procedures reasonably adapted to avoid errors in its 2020 HMDA data submission.

34. Freedom's HMDA-reporting errors are therefore not *bona fide* errors within the meaning of Regulation C. 12 C.F.R. § 1003.6(b).

35. Freedom's 2020 HMDA data contained errors in violation of HMDA, 12 U.S.C. § 2803, and Regulation C, 12 C.F.R. §§ 1003.4, 1003.5.

## Count II

*Violations of the 2019 Order*

36. The Bureau re-alleges and incorporates the allegations of Paragraphs 1-35 by reference.

37. Under § 1036(a)(1)(A) of the CFPA, it is unlawful for covered persons, such as Freedom, to "offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law[.]" 12 U.S.C. § 5536(a)(1)(A).

38. "Federal consumer financial law" is defined to include an "order prescribed by the Bureau." 12 U.S.C. § 5481(14).

39. Paragraph 29 of the 2019 Order prohibited Freedom from violating specific requirements of HMDA and Regulation C.

40. Freedom violated the Order by collecting, recording, and reporting inaccurate HMDA data, in violation of the specific requirements of HMDA and Regulation C.

41. Accordingly, Freedom violated § 1036(a)(1)(A) of the CFPA, 12 U.S.C. § 5536(a)(1)(A), by committing acts or omissions in violation of Federal consumer financial law.

## Count III

*Violations of the CFPA*

42. The Bureau re-alleges and incorporates the allegations of Paragraphs 1–35 by reference.

43. Section 1036(a)(1)(A) of the CFPA prohibits a covered person from offering or providing to a consumer any financial product or service not in conformity with "Federal consumer financial law" or otherwise committing any act or omission in violation of a "Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

44. The CFPA defines "Federal consumer financial law" to include HMDA and its implementing Regulation C. 12 U.S.C. § 5481(14).

45. Freedom's HMDA and Regulation C violations, described above in Count 1, constitute violations of § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## Demand for Relief

The Bureau requests that the Court:

a. permanently enjoin Defendant from committing future violations of HMDA, 12 U.S.C. §§ 2801-2810, and its implementing regulation, Regulation C, 12 C.F.R. pt. 1003; §§ 1031, 1036(a) of the CFPA, 12 U.S.C. §§ 5531, 5536(a); and any other provision of "Federal consumer financial law," as defined by 12 U.S.C. § 5481(14);

b. require Defendant to take such affirmative steps as may be necessary to prevent the recurrence of any violation of HMDA and Regulation C in the future;

c. grant additional injunctive relief as the Court may deem just and proper;

d. impose a civil money penalty against Defendant in an amount authorized by the CFPA, 12 U.S.C. § 5565(c);

e. award costs against Defendant; and

f. award additional relief as the Court may determine to be just and proper.

Dated: October 10, 2023　　　　　Respectfully submitted,

Eric Halperin
*Enforcement Director*

Deborah Morris
*Deputy Enforcement Director*

Michael Favretto
*Assistant Litigation Deputy*

*/s/ Emily Holness*
Emily Holness
Special Florida Bar ID A5503128
New York Bar No. 4947941

Hallie Ryan
Special Florida Bar ID A5503127
Virginia Bar No. 85927

*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
202-435-7841
Emily.Holness@cfpb.gov
Hallie.Ryan@cfpb.gov