UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:23-cv-81373- MIDDLEBROOKS-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU
  Plaintiff,

vs.

FREEDOM MORTGAGE CORPORATION,
  Defendants.

_____/

**BUREAU'S OPPOSITION TO MOTION TO STAY**

  The Court should deny Defendant Freedom Mortgage Corp.'s motion to stay this public enforcement action for months on end. Such delay would harm the public interest and would merely complicate and protract—rather than simplify—this case.

BACKGROUND

  Plaintiff Consumer Financial Protection Bureau is the primary enforcer of federal consumer financial laws, including those governing the multitrillion-dollar mortgage market. Defendant is one of the nation's largest non-bank mortgage lenders and a repeat violator of the consumer laws. The Bureau brought this suit in October 2023 to address Defendant's pervasive failures to comply with the important disclosure requirements in the Home Mortgage Disclosure Act (HMDA) and its implementing regulation, as well as with a consent order that Defendant entered into with the Bureau in 2019.

  Defendant now seeks to halt this public enforcement action in its tracks until the Supreme Court issues a decision in *CFPB v. Community Financial Services Ass'n of America, Ltd.*, No. 22-448 ("*CFSA*"), which it may not do for up to six months. In *CFSA*, the Court granted the

1

Bureau's request that it review an extreme outlier decision of the Fifth Circuit holding that Congress violated the Appropriations Clause when it passed a law appropriating money for the Bureau's operations. *See CFSA v. CFPB*, 51 F.4th 616 (5th Cir. 2022).[1] Every other court to have ever considered that issue (both before and since the Fifth Circuit's ruling) has disagreed and upheld the validity of the Bureau's funding. *See, e.g.*, *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 181-83 (2d Cir. 2023) (holding that "the CFPB's funding structure does not offend the Appropriations Clause"); *CFPB v. Consumer Advoc. Ctr., Inc.*, No. 19-cv-1998, 2023 WL 5162392, at *6-7 (C.D. Cal. July 7, 2023) ("the Bureau's funding scheme does not violate the Appropriations Clause"); *CFPB v. CashCall, Inc.*, No. 2:15-cv-7522, 2023 WL 2009938, at *3 (C.D. Cal. Feb. 10, 2023) ("the CFPB's funding structure does not violate … the Appropriations Clause"); *CFPB v. TransUnion*, No. 1:22-cv-1880, 2022 WL 17082529, at *5 (N.D. Ill. Nov. 18, 2022) ("agree[ing] with the conclusion reached by this substantial majority of courts" and upholding Bureau's funding); *CFPB v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 56-57 (D.R.I. 2020) (rejecting claim that "the CFPB's funding structure is unconstitutional"); *CFPB v. Fair Collections & Outsourcing, Inc.*, No. 19-cv-2817, 2020 WL 7043847, at *9 (D. Md. Nov. 30, 2020) ("the CFPB's funding structure complies with the Appropriations Clause's mandate"; collecting other cases).

The Supreme Court heard oral argument in *CFSA* in October 2023 and is expected to issue a decision by the end of June 2024.

---

[1] As with many other agencies, Congress funded the Bureau through its organic statute rather than annual spending bills. The Bureau's funds come from the receipts of the Federal Reserve System, of which the Bureau is a part. 12 U.S.C. § 5491(a). For fiscal years 2013 and later, Congress capped the amount the Bureau can draw at approximately $597.6 million, which is 12% of the total operating expenses of the Federal Reserve System as reported in 2009. *Id.* § 5497(a)(2)(A). The capped amount is adjusted annually based on a measure of inflation. *Id.* § 5497(a)(2)(B).

**LEGAL STANDARD**

District courts have "discretion to stay a case pending the resolution of related proceedings in another forum" but must not exercise that discretion "immoderate[ly]." *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000). "Determining whether to stay a case 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Keable v. U.S. Bank, N.A.*, No. 22-cv-80879, 2022 WL 3682209, at *1 (S.D. Fla. Aug. 9, 2022) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). Where there is "a fair possibility that the stay ... will work damage to some one else," the movant must "make out a clear case of hardship or inequity in being required to go forward" in order to obtain a stay. *Landis*, 299 U.S. at 255; *accord, e.g.*, *Thomas v. Merck & Co.*, No. 22-cv-80445, 2022 WL 4281336, at *1 (S.D. Fla. July 20, 2022).

**ARGUMENT**

Defendant has not met its burden to show that all progress in this public enforcement action should be halted for up to six months to await a decision in *CFSA*.

*First*, Defendant has not shown a sufficient likelihood that the stay it seeks would promote the efficient resolution of this case—as opposed to pointlessly protracting and complicating it. Defendant claims the Court should wait for a decision in *CFSA* in order to avoid "decid[ing] this issue now just to have to revisit [that decision] within the next six months." Stay Mot. at 4. But Defendant fails to show that resolving its claim about the Bureau's funding would be particularly demanding of the Court's limited time and resources—let alone that such a decision would need to be "revisited" in the future. As noted above, and as the Bureau will further explain in its opposition to Defendant's motion to dismiss, every court but one that has ever considered the funding claim—including after the Supreme Court granted certiorari in

*CFSA*—has rejected it without difficulty. Indeed, just by pursuing its request to delay this case, Defendant has already imposed more burden on the Court and the parties than if it had simply allowed the case to move forward in the ordinary course.

Moreover, to the extent that the Court has concerns about deciding the funding issue at this time, those concerns could be resolved by the Court deferring resolution of that issue while proceeding to decide the other claims raised in Defendant's motion to dismiss. *See* Fed. R. Civ. P. 12(a)(4)(A), (i) (making clear that court may postpone disposition of issues raised in Rule 12 motion). That was the approach recently taken in another Bureau enforcement action, where the court held in abeyance the funding issue while deciding all other issues that the defendant had raised in a motion for judgment on the pleadings. *See CFPB v. Fifth Third Bank, N.A.*, No. 1:21-CV-262, 2023 WL 7325956, at *1 (S.D. Ohio Sept. 26, 2023).[2]

Defendant further claims that a stay would save the Court having to "reissu[e] amended scheduling orders, or scheduling interim status conferences and hearings." Stay Mot. at 4. But it is *Defendant's* proposal that would derail and delay the existing schedule. This case is currently proceeding under the pretrial scheduling order entered last month by Magistrate Judge Matthewman, ECF No. 16, and the parties have begun discovery. The most efficient course at this point would be to allow the case to continue on—not to call an abrupt halt to the parties' efforts, throw out the pretrial schedule, wait an indeterminate number of months, and then start again at the beginning.

---

[2] Defendant also never explains why even if the Supreme Court were to find a problem with the Bureau's method of funding, that would require this case to be thrown out. It would not, including because there is no serious question that the Bureau could simply resume this prosecution once Congress provided it with a new, constitutionally valid appropriation of funds.

*Second*, the months-long delay Defendant seeks would be contrary to the public interest. Defendant is one of the largest mortgage originators in the country and originates hundreds of thousands of mortgages a year. *See, e.g.*, Compl. ¶¶ 14-16. The Bureau previously had to take action to address Defendant's failures to comply with HMDA's requirements, which use transparency and public disclosure as tools to monitor and improve lending practices in the mortgage market, to the ultimate benefit of homebuyers and the market itself. *See* Compl. ¶¶ 1-4. That action concluded in a consent order between the Bureau and Defendant in 2019.[3] Yet despite that order, Defendant continued to use systems it knew were faulty and failed to implement needed improvements, with the result that the lending data Defendant produced was riddled with errors. Unwarranted delay to the resolution of the Bureau's claims in this case would be contrary both to the Bureau's interest in ensuring that accurate and transparent information is available about the nation's mortgage market as well as to the public's "strong interest in the vigorous enforcement of consumer protection laws," *John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 205 (D.D.C. 2017).

The logic of Defendant's position is not limited to this case either. It would appear to apply to any ongoing effort by the Bureau to enforce federal consumer financial law. But it cannot be the case that the Fifth Circuit's outlier ruling—and the resulting need for the Bureau to ask the Supreme Court to review and reverse that decision—means that the Bureau should be prevented from moving forward with enforcement actions anywhere in the country until mid-2024. That result would hamstring effective enforcement of federal law and improperly give nationwide effect to one circuit's ruling (even as that ruling has been rejected by other circuits,

---

[3] In a separate matter, the Bureau recently fined Defendant $1.75 million for paying illegal kickbacks for mortgage loan referrals. *See In re Freedom Mortgage Corp.*, No. 2023-CFPB-0008, 2023 WL 7474372 (Aug. 17, 2023).

*see, e.g.*, *Moroney*, 63 F.4th at 181-83, and by every other court to have ever decided the same issue). The public interest weighs heavily against that result.

*Third*, Defendant will suffer no cognizable harm if this case continues forward—and certainly has not "b[orne] [its] burden of establishing 'a clear case of hardship or inequity'" from being denied a stay. *Thomas*, 2022 WL 4281336, at *1 (quoting *Landis*, 299 U.S. at 255). Defendant complains that, without a stay, "it will have expended time and resources defending itself." Stay. Mot. at 5. But a party denied a stay will *always* incur the ordinary costs of litigation as a result. That is why courts have rightly held that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *accord Glatt v. Fox Searchlight Pictures Inc.*, No. 11-cv-6784, 2013 WL 5405696, at *4 (S.D.N.Y. Sept. 17, 2013) ("A stay is inappropriate here because the only 'irreparable harm' identified by Defendants is the cost of continuing to litigate this action."). And even if Defendant's litigation costs were relevant, Defendant has not shown that any costs it will incur between now and a decision in *CFSA* would be especially onerous or unusual, including because Defendant will presumably have already finished briefing its funding argument before the Court resolves the motion to stay.

*Fourth*, and finally, Defendant does not meet its burden to show that the Court should exercise its discretion to stay this case merely by pointing to stay decisions in some other Bureau cases. *See* Stay Mot. at 3. To begin with, some of Defendant's cited decisions did not involve stays of the litigation at all. *See Texas Bankers Ass'n v. CFPB*, No. 7:23-CV-00144, 2023 WL 4872398 (S.D. Tex. July 31, 2023) (staying compliance date of Bureau regulation in light of binding Fifth Circuit precedent in *CFSA*, but allowing litigation to proceed); Order, *CFPB v. Law Offices of Crystal Moroney*, No. 20-3471 (2d Cir. June 28, 2023), ECF No. 165 (staying

issuance of mandate, but only after court had already rejected attack on Bureau's funding and resolved the appeal following grant of certiorari in *CFSA*). The others do not bind this Court's exercise of its own discretion and are not persuasive, including because they give insufficient weight to the harm to the public interest that would result if the Bureau were prevented from carrying out its duties to enforce federal consumer financial law.

Numerous decisions have come out the other way as well, denying stays to await the decision in *CFSA* or otherwise allowing Bureau actions to continue forward. *See, e.g.*, Order, *CFPB v. CashCall, Inc.*, No. 23-55259 (9th Cir. June 15, 2023), ECF No. 13 (denying stay of briefing in appeal from Bureau enforcement action); *CFPB v. TransUnion*, No. 22-cv-1880, 2023 WL 3605995, at *2 (N.D. Ill. Apr. 13, 2023) (denying stay of Bureau enforcement action); Order, *CFPB v. Commonwealth Equity Grp., LLC*, No. 1:20-cv-10991 (D. Mass. May 1, 2023), ECF No. 104 (same); *CFPB v. Carnes*, No. 23-cv-2151, 2023 WL 6143307, at *13-14 (D. Kan. Sept. 20, 2023) (same for Bureau collection action); *see also Fifth Third*, 2023 WL 7325956, at *1 (holding funding claim in abeyance but otherwise allowing Bureau action to proceed). This Court should follow the same path here.

## CONCLUSION

For all these reasons, the Court should deny Defendant's motion to stay and allow this public enforcement action to continue forward on schedule.

Dated: January 10, 2024                  Respectfully submitted,

*/s/* Emily Holness
Emily Holness
Special Florida Bar ID A5503128
New York Bar No. 4947941

Hallie Ryan
Special Florida Bar ID A5503127
Virginia Bar No. 85927

Joseph Lake
Special Florida Bar ID A5503154
California Bar No. 246679

Stephanie Garlock
Special Florida Bar ID A5503162
DC Bar No. 1779629

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Email: emily.holness@cfpb.gov
Email: hallie.ryan@cfpb.gov
Email: joseph.lake@cfpb.gov
Email: stephanie.garlock@cfpb.gov

*Attorneys for Plaintiff*