UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| **CONSUMER FINANCIAL PROTECTION BUREAU**, <br><br> *Plaintiff*, <br><br> v. <br><br> **FREEDOM MORTGAGE CORPORATION**, <br><br> *Defendant.* | CASE NO: 9:23-cv-81373-DMM |

**DEFENDANT FREEDOM MORTGAGE CORPORATION'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

In an effort to maintain its claim against Defendant Freedom Mortgage Corporation for inaccuracies in its Home Mortgage Disclosure Act reporting, Plaintiff Consumer Financial Protection Bureau obfuscates the facts alleged in its Complaint, casting Freedom's error rate as much more significant than the 0.23% that becomes apparent after simple calculations using the CFPB's factual assertions. Perhaps this is an attempt to distract the Court from the vagueness and utter lack of clarity around the pivotal concepts in HMDA and Regulation C on which the CFPB's case is based. Furthermore, the CFPB cannot overcome the prohibition against obey-the-law injunctions to enforce its own injunction against Freedom. The Court should accordingly grant Freedom's Motion to Dismiss.

I.

**THE CFPB PORTRAYS THE HMDA DATA ERROR RATE AS MUCH HIGHER THAN ALLEGED**

By its own allegation, the CFPB has sued Freedom for unintentional inaccuracies in 0.23% of Freedom's 2020 HMDA data. In its Opposition to Freedom's Motion to Dismiss ("Pl. Opp."), the CFPB duplicitously portrays Freedom's error rate as significantly higher. At 4 (Doc. 31) ("'[Defendant's] February 26, 2021 submission of its HMDA data to the Bureau was filled with errors' covering over 174,000 data entries and almost twenty percent of loans." Quoting Compl. ¶¶ 4 & 21 (Doc. 1) (alterations original)). But when simple arithmetic is applied to the CFPB's allegations, the proportion of inaccuracies is approximately 0.23%:[1]

- Freedom reported HMDA data for over **700,000 loans**. Compl. ¶ 18.
- For each of those loans, Freedom was required to report **110 different data points**.[2] *See* FEDERAL FINANCIAL INSTITUTIONS EXAMINATION COUNCIL, A GUIDE

---

[1] The CFPB used approximate numbers in its allegations in its Complaint.
[2] The CFPB misleadingly refers to 38 *categories* of data that must be reported, Pl. Opp. 4; but the FFIEC's Guide to HMDA Reporting (which is cited in the same bullet-

1

> TO HMDA REPORTING: GETTING IT RIGHT! Appx. G (Jan. 9, 2020) (listing 110 categories of data required to be included in the lender's Loan/Application Register for each transaction).[3]

- The total number of data points submitted is the total number of loans multiplied by the total number of data points required per loan:

    700,000 x 110 = **77,000,000 total data points submitted**.

- Freedom's resubmission corrected **174,000 of those individual data points**. Compl. ¶ 21.

The error rate is the number of alleged data-point errors divided by the total number of data points submitted: 174,000/77,000,000 = **0.23% error rate**. Conversely, the accuracy rate for Freedom's HMDA data is 100% minus the error rate: 100% - 0.23% = **99.77% accuracy rate**.

## II.
### THE MEANING OF "ACCURACY" CANNOT BE DETERMINED BY THE TEXT OF THE LAW

The requirement for accuracy in HMDA data is unconstitutionally vague because neither HMDA nor Regulation C establish any meaning for the fundamental term "accuracy." In an effort to argue that "accuracy" requires absolute perfection, the CFPB points only to a provision of law which specifies the types of inaccuracies that do *not* constitute a violation of HMDA. Indeed, while the CFPB's commentary accompanying Regulation C does not shed light on what accuracy *is* required in HMDA data, it also acknowledges that absolute perfection is *not* required. Because the CFPB cannot show any clear standard for "accuracy" as established by law, HMDA's accuracy requirement

---

point containing this footnote) makes very clear that 110 ***data points*** are required to be reported for each loan.

[3] Available at https://www.ffiec.gov/hmda/pdf/2020Guide.pdf (last visited Dec. 18, 2023).

2

is unconstitutionally vague, invalid and unenforceable as applied to Freedom. The Court should accordingly dismiss this lawsuit.

**A.     "Accuracy" is not defined and is therefore unconstitutionally vague.**

Neither HMDA nor Regulation C provides constitutionally fair notice as to what accuracy is required in HMDA data. The only provision of those laws that imposes *any* accuracy requirement—i.e., the only provision that even uses the term "accuracy"—is in 12 C.F.R. § 1003.5: "An authorized representative of the financial institution with knowledge of the data submitted shall certify to the accuracy and completeness of data submitted." *See also* Pl. Opp. 4 (quoting same without citing any other provision requiring accuracy, as there is none).

But this leaves open the question as to what *this* use of "accuracy" means. After all, "[a]ccuracy is quite clearly not a self-defining concept." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1157 (11th Cir. 1991), *superseded on other grounds as recognized in Brown v. Equifax Info. Servs.*, No. 1:09-CV-0168, 2010 U.S. Dist. LEXIS 162659, at *27 fn.8 (N.D. Ga. Feb. 16, 2010). Because neither HMDA nor Regulation C answers that question, the accuracy requirement is unconstitutionally vague and cannot be enforced.

In response to this challenge, the CFPB pretends the accuracy requirement of 12 C.F.R. § 1003.5 is just like a speed limit. Pl. Opp. 11. The CFPB likens itself to the traffic patrol officer who may use his discretion to cite a driver for driving over the speed limit, whether the driver is clocked at only one mile over or 20 miles over the limit. *See id.*

But this argument for prosecutorial discretion, *see also id.* 6, is a straw man set up by the CFPB so that it does not have to deal with HMDA's vagueness. Although traffic enforcement is a creative way to view the CFPB's enforcement action, it is altogether

3

inapposite: "35 MPH" is an objective proscription, obvious in its meaning; "accuracy," on the other hand, "is quite clearly not a self-defining concept," *Cahlin*, 936 F.2d at 1157.

The CFPB's analogy would only fit HMDA's accuracy requirement if the speed limit were posted as "MODERATE." Obviously, "MODERATE" is a subjective term that is not self-defining, and it would not work as a constitutionally enforceable speed limit. Although both the traffic patrol officer and the CFPB each have prosecutorial discretion to enforce their mandates, they cannot enforce vague requirements of law—whether "MODERATE" speeds or "accuracy" in HMDA data. Thus, the CFPB's analogy, when critically considered, shows only how deficient HMDA's accuracy requirement is.

**B.      The CFPB's arguments do not show what accuracy is required by the law.**

Nevertheless, in an effort to maintain its claims against Freedom for inaccuracies amounting to 0.23% of its reported data, the CFPB must argue for an unforgiving interpretation of the law that is unsupported in the text of HMDA or Regulation C: "Every error is a violation of HMDA and Regulation C unless (1) the error was unintentional and (2) the entity committing the error maintained the procedures reasonably adapted to avoid such an error." Pl. Opp. 5 (citing 12 C.F.R. § 1003.6(b)).

But the provision of Regulation C referenced in support of this proposition—12 C.F.R. § 1003.6(b)—states only what does *not* constitute a violation of law:

> An error in compiling or recording data for a covered loan or application *is not a violation of the Act or this part* if the error was unintentional and occurred despite the maintenance of procedures reasonably adapted to avoid such an error.

12 C.F.R. § 1003.6(b)(1) (emphasis added). Wholly absent from this provision is any indication of what *will* constitute a violation. *See id.* And yet, this is the provision upon which the CFPB tells this Court its case hinges. *See* Pl. Opp. 5.

4

Interestingly, this new argument also represents a sly shift from the CFPB's pleaded case. Nowhere in the Complaint does the CFPB allege that inaccuracies in Freedom's HMDA data violate *this* provision of law. *See* Compl., *generally* (Paragraph 34 is the only instance mentioning this provision; and it does not allege any standard for accuracy, claiming only that Freedom's HMDA-reporting errors do not fall within its ambit). Instead, the CFPB's pleaded claims depend on other provisions of law: "Freedom's 2020 HMDA data contained errors in violation of HMDA, 12 U.S.C. § 2803, and Regulation C, 12 C.F.R. §§ 1003.4, 1003.5." Compl. ¶ 35. Rather than attempt to defend *these* provisions of law, the CFPB has attempted to reframe its legal claim against Freedom.

The CFPB had to innovate a new position and argue that the provision of law establishing what is *not* a violation of HMDA (12 C.F.R. § 1003.6(b)(1)) is actually the provision of law that establishes what is a violation of HMDA because none of the provisions the CFPB sued upon—i.e., those provisions that require collection and reporting of HMDA data—provide any support for the CFPB's position that the law requires perfectly accurate data. *See* 12 U.S.C. § 2803; 12 C.F.R. §§ 1003.4 & 1003.5. In fact, those collection-and-reporting provisions do not establish a requirement of any particular level of accuracy at all (and, as discussed above, only 12 C.F.R. § 1003.5 even mentions "accuracy"). *See id.* Consequently, they are unconstitutionally vague as to this requirement and must be invalidated. *See FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012) (Due process "requires the invalidation of laws that are impermissibly vague."). Because neither the CFPB nor this Court can enforce an invalid law, each of the CFPB's claims—all three of which are premised on a requirement that HMDA data be reported with some unannounced level of accuracy—should be dismissed.

5

**C.     The CFPB's commentary shows "accuracy" does not require perfection.**

Particularly in the case of HMDA data, interpreting "accuracy" to mean absolute perfection (as the CFPB argues, Pl. Opp. 5) would be unfair and inconsistent with the CFPB's own official commentary, which recognizes just how impossible that is.  Outside the context of this lawsuit, the CFPB is willing to acknowledge the unavoidability of inaccuracies in HMDA data:

> Many of the commenters stated that despite the implementation of appropriate systems and controls and efforts to comply with the spirit of Regulation C, innocent errors and human judgment errors in interpretation and data input are impossible to eliminate completely.
>
> * * * * *
>
> After considering the comments, the Bureau has concluded that there are more effective ways to address the issues raised by the commenters than by making substantive changes to § 1003.6(b).  In reaching this conclusion, ***the Bureau accepts that some errors in data compilation and reporting are difficult to avoid altogether.***

Home Mortgage Disclosure (Regulation C), 80 Fed. Reg. 66,254-55 (Oct. 28, 2015) (emphasis added).

Attempting to re-cast this commentary, the CFPB points out that it also stated "accurate data is essential" in those official comments.  Pl. Opp. 4 (citing Home Mortgage Disclosure (Regulation C), 80 Fed. Reg. 66,255).  But there, too, it is unclear what "accurate" means—this comment does not even purport to establish what is required when the law refers to "accuracy."  Stating that "accurate data is essential" certainly does not make clear that the only acceptable level of accuracy is absolute perfection, particularly in light of the entirety of the CFPB's commentary.  It would be unfair to hold Freedom to an unannounced, vague standard—and, more importantly to the determination of this case, it would be unconstitutional.  The Court should dismiss the case accordingly.

## III.
### THE CFPB'S ALTERNATIVE PROVISION IS ALSO UNCONSTITUTIONALLY VAGUE

Just as Regulation C's use of "accuracy" is unconstitutionally vague and therefore unenforceable, the requirement the CFPB now points to for "the maintenance of procedures reasonably adapted to avoid such an error," 12 C.F.R. § 1003.6(b)(1)[4], is also unconstitutionally vague and unenforceable as applied to Freedom. Each of these requirements is "so indefinite as really to be no rule or standard at all." *See Burns v. Town of Palm Beach*, 999 F.3d 1317, 1349 (11th Cir. 2021). Quoting this passage from *Burns*, the CFPB argues that HMDA and Regulation C "easily pass that test"—but the CFPB can make this assertion only because it does not subject these provisions to any test at all. Pl. Opp. 8.

In *Burns*, a homeowner challenged a Palm Beach building ordinance as unconstitutionally vague after he was denied a building permit. 999 F.3d at 1328. The Eleventh Circuit held that the ordinance was not unconstitutionally vague, noting that it contained "detailed criteria." *Id.* 1350-51. In fact, the ordinance contained ten specific criteria for approval of a building permit. *Id.* 1324-25. And for those criteria that might otherwise be subject to attack as overly vague, e.g., "not excessively similar to any other structure . . . within 200 feet," the ordinance provided additional sub-criteria so that property owners could determine how to meet the ordinance's requirements, e.g., "visibly identical front or side elevations" and "identical size and arrangement of either doors, windows, porticos." *Id.* In contrast, neither HMDA nor Regulation C provides *any* criteria to determine what is meant by the term "accuracy" in 12 C.F.R. § 1003.5 or

---

[4] The other criterion in this section is that the error is unintentional. Because the CFPB does not allege any of the inaccuracies in Freedom's HMDA data to be intentional, *see* Compl., *generally*, only the "maintenance of procedures reasonably adapted to avoid such an error" criterion is pertinent to this case.

7

the broad phrase "procedures reasonably adapted to avoid such an error" in § 1003.6(b)(1).

Section 1003.6(b)(1) does provide that unintentional errors are expressly permitted (apparently without any limit) so long as the filer maintains such "reasonably adapted" procedures. As discussed in section II.B above, the CFPB improperly attempts to flip this provision providing an exception to liability into a provision establishing liability. But whether the Court credits that argument or not (and it should not), any determination of whether Freedom violated HMDA with inaccurate data also hinges on whether it maintained such vague and undefined "reasonably adapted" procedures. *See* 12 C.F.R. § 1003.6(b)(1). This phrase is subjective, not self-defining, and the law lacks any further criteria by which Freedom or other lenders may determine "what is required of them so they may act accordingly." *See FCC*, 567 U.S. at 253.

For this reason, each of these requirements are "so indefinite as really to be no rule or standard at all," *see Burns*, 999 F.3d at 1349. Because each of these concepts separately determine Freedom's liability—Freedom is only liable for failing some unknown standard of "accuracy," and even then only if it also fails to maintain "procedures reasonably adapted to avoid such an error"—a determination that either is unconstitutionally vague requires dismissal of the CFPB's case.

## IV.

**THE CFPB CANNOT OVERCOME THE PROHIBITION AGAINST OBEY-THE-LAW INJUNCTIONS**

In spite of controlling authority that an obey-the-law injunction is unenforceable,[5] the CFPB argues that it should be able to enforce its own obey-the-law

---

[5] *SEC v. Graham*, 823 F.3d 1357, 1362 fn.2 (11th Cir. 2016); *SEC v. Goble*, 682 F.3d 934, 950 & 952 (11th Cir. 2012). The CFPB points out that the dicta in footnote 14 of *SEC v. Smyth*, 420 F.3d 1225 (11th Cir. 2005), was not controlling when it was published. Pl. Opp. 15. Nonetheless, it is consistent with the controlling authority subsequently published (listed at the beginning of this footnote) and is thus instructive.

8

injunction anyway. Pl. Opp. § III.A. In advancing this argument, the CFPB primarily depends on cases that are inapplicable here. *E.g.*, *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1362 (11th Cir. 2019) (defendants understood specific conduct required by injunction—i.e., the requirement to remit payroll taxes; but here, an understanding of the relevant provisions of HMDA and Regulation C is not possible because they are vague and ill defined); *FTC v. Nat'l Urological Grp., Inc.*, 786 Fed. App'x 947, 951 (11th Cir. 2019) (injunction contained requirements beyond mere reference to law); *SEC v. Keener*, 644 F. Supp. 3d 1290, 1302 (S.D. Fla. 2022) (injunction specifically described prohibited conduct). The CFPB's cited authorities are therefore inapposite and do not support applying an exception to the clear rule against obey-the-law injunctions in this case.

To its credit, the CFPB at least admits that "injunctions must provide specific notice to an enjoined party of what conduct is prohibited." Pl. Opp. 12 (citing *SEC v. Goble*, 682 F.3d 934, 951 (11th Cir. 2012)). But then it makes the absurd argument that "what is required by HMDA and Regulation C is straightforward." *Id.* As shown in §§ II and III above, it is not even clear what "accuracy" or "procedures reasonably adapted to avoid such an error" mean as used in the CFPB's regulations, and those terms are apparently pivotal for the CFPB's case against Freedom. Furthermore, enjoining Freedom to comply with not a single clear provision but an entire statutory and regulatory scheme—i.e., "merely cross-referenc[ing] the relevant statutes and regulations"—impermissibly requires Freedom to look beyond "'the four corners of the injunction to determine what [it] must do or refrain from doing.'" *See Goble*, 682 F.3d at 952 (quoting *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1532 fn.12 (11th Cir. 1996)). For these reasons, the CFPB cannot enforce its obey-the-law injunction against Freedom.

9

## V.
### THE CFPB HAS FAILED TO REBUT FREEDOM'S MOTION TO DISMISS

The accuracy requirement in HMDA and Regulation C is unconstitutionally vague—there is no way for Freedom to determine from those laws what is required of it. Likely for this reason, the CFPB's Complaint does not plead any certain requirement for accuracy in the HMDA data reported by mortgage lenders like Freedom, and it does not explicitly state what level of accuracy Freedom's HMDA data contained (although it is possible to calculate a 99.77% accuracy rate from the allegations made). The CFPB thus fails to state a claim against Freedom upon which relief can be granted.

Furthermore, the law prohibits enforcement of an obey-the-law injunction, so the CFPB also fails to state a claim upon which relief can be granted for its attempt to enforce its obey-the-law injunction against Freedom. For these reasons, and all those stated in Freedom's Motion to Dismiss, this Court should dismiss the CFPB's claims in their entirety.

Dated:  January 29, 2024

Respectfully submitted,

By:  /s/ *Herman J. Russomanno III*
Herman J. Russomanno III
Fla. Bar No. 21249
herman2@russomanno.com

RUSSOMANNO & BORRELLO, P.A.
*Local Counsel for Defendant*
*Freedom Mortgage Corporation*
Museum Tower – Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103

Mitchel H. Kider
Timothy P. Ofak
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel: (202) 628-2000
Fax: (202) 628-2011
kider@thewbkfirm.com
ofak@thewbkfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will provide automatic notice to the below listed counsel of record:

Emily Holness
emily.holness@cfpb.gov
Hallie Ryan
hallie.ryan@cfpb.gov
Joseph Lake
joseph.lake@cfpb.gov
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

    /s/ *Herman J. Russomanno III*
Herman J. Russomanno III