UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-cv-81373-MIDDLEBROOKS/MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU,

    Plaintiff,

v.

FREEDOM MORTGAGE CORPORATION,

    Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO RESPOND TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS [DE 39]**

**THIS CAUSE** is before the Court upon the following: (1) Plaintiff Consumer Financial Protection Bureau's ("Plaintiff") Motion to Compel Defendant to Respond to Plaintiff's First Request for Production of Documents ("Motion to Compel") [DE 39]; (2) Defendant Freedom Mortgage Corporation's ("Defendant") Opposition to Plaintiff's Motion to Compel ("Response") [DE 43]; and (3) Plaintiff's Reply [DE 44]. The Motion to Compel was referred to the Undersigned by the Honorable Donald M. Middlebrooks, United States District Judge. [DE 40]. The Motion to Compel is fully briefed and ripe for review.

**I. BACKGROUND**

On October 10, 2023, Plaintiff filed a Complaint against Defendant under the Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5564(a), and the Home Mortgage Disclosure Act

1

(HMDA), 12 U.S.C. § 2804(b)(1)(B), (d), and its implementing regulation, Regulation C, 12 C.F.R. § 1003." [DE 1 at 1]. Plaintiff alleged that Defendant, "one of the nation's largest non-bank mortgage lenders, has been required to collect and annually report to the government mortgage loan data under HMDA and Regulation C since at least 2014." [DE 1 at 2 ¶ 3]. In this regard, "[i]n 2019, [Plaintiff] found that [Defendant] had violated HMDA by intentionally misreporting data concerning borrower race, ethnicity, and sex from 2014–2017." *Id.* Thus, Plaintiff alleges that it "agreed to resolve these findings through a consent order (2019 Order) requiring [Defendant] to pay a civil money penalty, comply with HMDA, and undertake other corrective actions, including developing and improving its HMDA policies and procedures." *Id.*

However, Plaintiff alleges that "[t]he 2019 Order did not mark the end of [Defendant's] HMDA failures." *Id.* at ¶ 4. Rather, Defendant's "February 25, 2021 submission of its 2020 HMDA data to [Plaintiff] was filled with errors," and Defendant's "violations continued because of pervasive deficiencies in its policies, procedures and systems to collect and report HMDA data and because, despite knowing its systems were faulty, it failed to implement adequate changes to its HMDA compliance management system to ensure the accuracy of its HMDA data." *Id.* at ¶¶ 4–5. Accordingly, Plaintiff's Complaint alleges three counts against Defendant—violations of HMDA and Regulation C ("Count I"); violations of the 2019 Order ("Count II"); and violations of the CFPA ("Count III"). *Id.* at 7–9.

## II.     MOTION, RESPONSE, AND REPLY

A. Plaintiff's Motion to Compel [DE 39]

Under Rule 37(a) of the Federal Rules of Civil Procedure, Plaintiff "respectfully moves this Court for an order compelling Defendant . . . to fully respond to [Plaintiff's] First Request for

Production of Documents . . . consistent with Instruction I in those Requests." [DE 39 at 2]. Plaintiff notes that, "[u]nless a Request specifies otherwise, Instruction I sets the relevant time period for each Request in [Plaintiff's] First RFPs as June 5, 2019 to the present." *Id.* To this end, Plaintiff argues that "[t]he relevant time period in Instruction I is consistent with [Plaintiff's] allegations as well as the demand for relief set forth in its Complaint" and that "[t]here is no valid basis for Defendant to resist complying with that Instruction." *Id.* Indeed, Plaintiff takes issue with Defendant's "objection with respect to documents and information not already produced that were created after the end of 2021 that are not related to the 2020 HMDA data." *Id.* at 3.

Plaintiff argues that, "[b]y seeking to limit its responses to documents created before the end of 2021 (unless previously provided during [Plaintiff's] preceding investigation), Defendant ignores the relevance of documents created after 2021 to the allegations in [Plaintiff's] Complaint and to its demand for relief." *Id.* at 4 (footnote omitted). More specifically, Plaintiff maintains that "[d]ocuments and information created after 2021 pertain (e.g., as points of comparison) to Defendant's compliance deficiencies with respect to its prior HMDA systems, procedures, and practices." *Id.* Plaintiff also maintains that "[d]ocuments created after 2021 are . . . relevant to [Plaintiff's] demand for relief, including [Plaintiff's] request for injunctive relief and the statutory factors courts shall consider in determining the amount of civil money penalty under 12 U.S.C. § 5565(c)(3)." *Id.* at 5. According to Plaintiff, with respect to injunctive relief, "more recent documents and information—for example, Defendant's recent policies and procedures concerning HMDA compliance, or recent reports or recommendations concerning HMDA submissions—are particularly relevant to whether there is a cognizable danger of recurrent violation." *Id.* (citation and internal quotation marks omitted).

And finally, to the extent that Defendant asserted for the first time that expanding the scope of discovery to other years related to the non-HMDA data was "burdensome" or not proportionate to the needs of the case, Plaintiff argues that such an objection "amounts to a boilerplate objection that should be rejected." *Id.* at 6. Thus, Plaintiff "moves the Court to compel Defendant to comply with Instruction I in its First RFPs for its forthcoming supplemental responses to those Requests." *Id.*

B. Defendant's Response [DE 43]

Defendant begins by arguing that Plaintiff "seeks to compel the production of irrelevant documents that are not proportional to the needs of the case, as defined by [Plaintiff's] own allegations. [DE 43 at 2]. In this regard, Defendant argues that Plaintiff "asks the Court to force Defendant . . . to comply with an over-inclusive general instruction (Instruction I) to its discovery requests defining the period for documents to be produced as including several years ***after*** [Defendant's] submission of . . . [HMDA] data for 2020, which is the ***only*** data submission on which [Plaintiff's] claims are based." *Id.* With that being said, in response to individual requests for production, Defendant states that it "has agreed to produce documents to [Plaintiff] that are within the scope of discovery ***even if those documents were produced or created after [Defendant's] submission of its 2020 HMDA data***." *Id.*

Indeed, after noting that Plaintiff's Motion to Compel [DE 39] only challenges Defendant's "objection to general Instruction I seeking documents created or produced after [Defendant's] submission of its 2020 HMDA data," Defendant argues that the Court should deny Plaintiff's Motion to Compel for three reasons. *Id.* at 2–3. First, according to Defendant, the period specified by Plaintiff "is excessive and therefore inappropriate as a ***general*** time specification." *Id.* Second,

4

Defendant argues that it "has agreed to produce all otherwise relevant, responsive, non-privileged documents." *Id.* at 3. And third, Plaintiff "has not challenged [Defendant's] objections to [Plaintiff's] individual [RFPs] to the extent that they seek documents outside the proper scope of discovery." *Id.*

In further detail, Defendant argues that it "responded in 2022 to a Civil Investigation Demand by [Plaintiff] with respect to its 2020 HMDA submissions." *Id.* According to Defendant, Plaintiff's "investigation that included the [Civil Investigation Demand] concerned [Defendant's] submission of its 2020 HMDA data on February 26, 2021, and its resubmission of 2020 HMDA date on September 30, 2021," which "are the ***sole*** basis of [Plaintiff's] Complaint and all of its claims" against Defendant. *Id.* And, in this regard, Defendant notes that it produced "6,647 documents—over 24,000 pages—requested by [Plaintiff] and provided a detailed privilege log with respect to 3,124 additional documents." *Id.* at 4. Defendant argues that these documents "were relevant to [Defendant's] HMDA data as well as [Defendant's] general HMDA policies, procedures, and practices." *Id.*

Thus, on this basis, Defendant argues that Defendant "has not met its burden to prove that the documents it seeks to compel are relevant." *Id.* Indeed, Defendant maintains that it has "already produced—and has agreed to make further production of—***relevant*** documents within the scope of discovery that are responsive to [Plaintiff's] requests." *Id.* And, to the extent that Plaintiff argues that the documents created after 2021 pertain to "Defendant's compliance deficiencies with respect to its prior HMDA systems, procedures and practices," Defendant asserts that the argument "defies logic," as Plaintiff "fails to explain how [Defendant's] policies, procedures, and practices ***after*** 2021 would make any relevant fact—that is, any fact related to [Defendant's] 2020 HMDA data

5

submission—either more or less probable." *Id.* at 5. Defendant reasserts this argument with respect to Plaintiff's quest to ascertain whether "there is a cognizable danger of recurrent violation," as Plaintiff "has not even ***alleged*** that there is a danger of [Defendant's] recurrent or continuing violation." *Id.*

C. Plaintiff's Reply [DE 44]

Plaintiff first repeats its assertion that the time period specified in Instruction I is relevant and proportional to its allegations and demand for relief. [DE 44 at 2]. Thereafter, Plaintiff notes that, despite Defendant's characterization of Instruction I as a general instruction applicable to all discovery requests, at least four requests for production "specify a relevant time period for responsiveness far shorter than the period set forth in Instruction I." *Id.* at 3 n.1. Plaintiff also notes that, to the extent Defendant now contends that its objection to Instruction I is separate and apart from its objections to the specific RFPs having "no connection to or bearing on [Defendant's] 2020 HMDA submissions," Defendant's "objection to limit its forthcoming productions to a narrower time period and to its 2020 HMDA data submissions is coextensive and premised on relevancy, and has been treated as such by the parties until now." *Id.* at 3 n.2.

Turning to the RFPs in particular, Plaintiff argues:

> Non-privileged documents and information responsive to the [Plaintiff's] First RFPs that Defendant seeks to withhold relate to, among other things, Defendant's HMDA systems, procedures, and practices during the relevant period (RFP No. 1). These include documents directly bearing on Defendant's sample testing, quality control, and validation measures concerning its HMDA data submissions (modified RFP No. 6), and assessments or recommendations concerning those submissions (RFP No. 14). Such responsive documents are relevant to [Plaintiff's] allegations— including its allegations that Defendant's HMDA procedures were not reasonably adapted to avoid the errors in Defendant's 2020 HMDA data submissions—as well as its demand for relief. These documents are solely within Defendant's control, and important to the issues in this case.

6

*Id.* at 4. And, on this matter, Plaintiff notes that the law is clear in this district that the burden of showing that the requested discovery is not relevant to the issues is on the party resisting that discovery. *Id.*

Additionally, as to Defendant's argument for resisting production of responsive documents created after 2021 based on relevancy, Plaintiff argues that:

> As explained in its Motion, [Plaintiff] alleges in its Complaint that Defendant's 2020 HMDA reporting errors were not "bona fide" within the meaning of Regulation C, see 12 C.F.R. § 1003.6(b)(1), such that those reporting errors constituted violations of HMDA, see Compl. ¶¶ 22–28 ("Freedom Failed to Maintain Procedures Reasonably Adapted to Avoid Errors, and Its Errors Were Not Bona Fide"). Accordingly, through its First RFPs, [Plaintiff] seeks, among other responsive documents, the "policies, procedures, instructions, or training materials concerning HMDA or Regulation C" (RFP No. 1) Defendant had in place on the date [Plaintiff] filed its Complaint, as well as those in place on the dates of Defendant's 2020 HMDA data submissions and on the date of [Plaintiff's] 2019 Consent Order with Defendant. Comparing Defendant's procedures across these key dates will help [Plaintiff] to expose Defendant's procedural gaps and also, significantly, to determine which of those gaps may have persisted beyond the 2021 submission dates.
>
> Likewise, [Plaintiff] seeks reports, assessments, or recommendations concerning Defendant's HMDA submissions (RFP No. 14) across the relevant time period for insights into whether Defendant's risk and audit systems identified any compliance deficiencies, and which (of any) recommended changes Defendant adopted (whether before or after its 2020 HMDA data submissions). While Defendant does not discuss [Plaintiff's] bona fide error allegations in its Opposition, [Plaintiff] anticipates Defendant will raise the issue at length later in this litigation.

*Id.* at 5. Moreover, Plaintiff points out that, with respect to its request for injunctive relief, Defendant ignores the statutory factors courts must consider when determining the amount of any civil money penalty under 12 U.S.C. § 5565(c)(3). *Id.* at 5–6. And, because injunctive relief is appropriate where there is a cognizable danger of recurrent violation, Plaintiff maintains that "Defendant's post-2021 policies and procedures addressing HMDA compliance, as well as reports

and recommendations concerning its more recent submissions, are particularly relevant to this question of future violations." *Id.* at 6.

### III. ANALYSIS AND RULINGS

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery as "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering the importance of the issues at stake, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, and whether the burden of the discovery outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1). "It is well established that the courts must employ a liberal standard in keeping with the purpose of the discovery rules." *Davis v. Nationwide Ins. Co. of Am.*, No. 19-cv-80606, 2020 WL 7480819, at *3 (S.D. Fla. Dec. 18, 2020). To this end, "the burden of showing that the requested discovery is not relevant to the issues in the case is on the party resisting discovery." *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001).

However, Rule 26(b) allows discovery "through increased reliance on the commonsense concept of proportionality." *In re: Takata Airbag Prod. Liab. Litig.*, 15–2599–MD, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, 2075 *Year–End Report on the Federal Judiciary* 6 (2015)); *Reuter v. Physicians Cas. Risk Retention Grp.*, No. 16-80581-CV, 2017 WL 395242, at *2 (S.D. Fla. Jan. 27, 2017). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Office Depot, Inc. v. Elementum Ltd.*, No. 19-CV-81305, 2020 WL 5506445, at *3 (S.D. Fla. Sept. 14, 2020) (citing *Tiger v. Dynamic Sports Nutrition, LLC*, Case No. 15-cv-1701, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016)).

The Court has carefully considered Plaintiff's Motion to Compel [DE 39], Defendant's Response [DE 43], Plaintiff's Reply [DE 44], the discovery requests and responses, and the entire docket in this case. To this end, the Court notes that, seemingly, the sole dispute pertaining to the Motion to Compel is the temporal scope of document production.

Plaintiff's First Request for Production of Documents [DE 39-1] includes the following Instruction at issue:

> I. Unless otherwise specified, the relevant time period for which production of Documents is requested shall be from June 5, 2019 to the present.

[DE 39-1 at 3]. Plaintiff maintains that this temporal scope is appropriate given its allegations and demand for relief. Defendant claims otherwise, arguing that by Plaintiff's own allegations in the Complaint, data after the submission of the 2020 HMDA data is overly burdensome and disproportionate to the needs of the case. In this regard, the Court notes that Defendant focuses on the allegations in the Complaint. However, upon reviewing those allegations, the Court does find that documents created after 2021 (and not otherwise previously provided to Plaintiff in early 2022) to be relevant and proportional to the needs of the case at this juncture.

Specifically, Plaintiff's Complaint contains the following pertinent allegations:

22. Freedom did not maintain a compliance management system with procedures reasonably adapted to avoid HMDA errors.

23. Many errors in Freedom's 2020 HMDA data were caused by widespread, systemic issues and compliance management systems failures, not isolated one-off mistakes. The issues include but are not limited to:

   a. inconsistent or incomplete data entry policies and procedures;
   b. failure to update information in Freedom's internal systems; and
   c. systems-wide data mapping issues.

> 24. Freedom's own internal audit team, in a review covering the period September 2020 through August 2021 (a period that included both the annual 2020 data submissions and 2021 HMDA data submissions for the first half of the year), also found serious deficiencies in Freedom's HMDA-related processes, procedures, and controls, and assigned an audit rating of "Needs Improvement."
>
> 25. Specifically, the internal audit concluded that "steps and operations supporting creation of the HMDA L[oan] A[pplication] R[egister] are missing from or incompletely captured in process documents;" and that "HMDA management reporting is inconsistent in form, content, documentation and in its articulated escalation protocols."
>
> 26. Freedom's internal audit also contained a "High Risk" finding due to Freedom's incomplete HMDA Loan Application Register processes, and the audit team warned that these incomplete processes may result in undetected errors on the annual HMDA data submission, require resubmission, and may result in additional regulatory scrutiny and penalties.
>
> 27. At the time of Freedom's 2020 HMDA data submission, Defendant was subject to the Bureau's 2019 Order, which included prohibitions on further violations of HMDA and Regulation C. But Freedom did not have or use an effective system for sampling and validating loan files against the data reported to ensure that that the 2020 HMDA data submission was accurate.
>
> 28. The errors in Freedom's 2020 HMDA data submission were therefore not bona fide.

[DE 1 at 6–7 ¶¶ 22–28]. Moreover, within the Complaint, Plaintiff seeks the following relief in this case:

> a. permanently enjoin Defendant from committing future violations of HMDA, 12 U.S.C. §§ 2801-2810, and its implementing regulation, Regulation C, 12 C.F.R. pt. 1003; §§ 1031, 1036(a) of the CFPA, 12 U.S.C. §§ 5531, 5536(a); and any other provision of "Federal consumer financial law," as defined by 12 U.S.C. § 5481(14);
>
> b. require Defendant to take such affirmative steps as may be necessary to prevent the recurrence of any violation of HMDA and Regulation C in the future;
>
> c. grant additional injunctive relief as the Court may deem just and proper;
>
> d. impose a civil money penalty against Defendant in an amount authorized by the CFPA, 12 U.S.C. § 5565(c);

  e. award costs against Defendant; and

  f. award additional relief as the Court may determine to be just and proper.

*Id.* at 9–10.

  Accordingly, based upon the allegations in the Complaint—and Plaintiff's demand for relief, which includes a request for injunctive relief—it seems clear to the Court that Plaintiff is entitled to the requested data (at least up until the filing of the instant lawsuit, on October 10, 2023). Indeed, Plaintiff has specifically alleged that the errors in Defendant's 2020 HMDA data submission were not "bona fide,"[1] and has alleged that Defendant's "violations continued because of pervasive deficiencies in its policies, procedures and systems to collect and report HMDA data and because, despite knowing its systems were faulty, it failed to implement adequate changes to its HMDA compliance management system to ensure the accuracy of its HMDA data." [DE 1 at 2 ¶ 5; 7 ¶ 28]. To this end, and as noted by Plaintiff, "[i]njunctive relief is appropriate where there is a cognizable danger of recurrent violation." *FTC v. Cap. Choice Consumer Credit, Inc.*, No. 02-21050 CIV, 2004 WL 5149998, at *43 (S.D. Fla. Feb. 20, 2004). And, "[t]o determine the likelihood of recurrence, the court should consider the past as a key for the future; past illegal conduct is highly suggestive of the likelihood of future violations." *FTC v. Netran Dev. Corp.*, No. 05-2223-CIV, 2006 WL 8433430, at *1 (S.D. Fla. June 12, 2006).

  Thus, the Court finds that documents created after 2021 (and not otherwise previously provided to Plaintiff in early 2022) are relevant and proportional to the needs of the case and shall

---

[1] Pursuant to 12 C.F.R. § 1003.6(b)(1), a bona fide error involves an error that "was unintentional and occurred despite the maintenance of procedures reasonably adopted to avoid such an error."

11

be produced. In fact, the Court notes that in the Response, Defendant maintains that in response to *individual* RFPs, it has agreed to produce documents that are within the scope of discovery "***even if those documents were produced or created after [Defendant's] submission of its 2020 HMDA data***." [DE 43 at 2]. The Court sees no reason why a *general* time frame applicable to all of the RFPs should be treated differently. And, the Court rejects Defendant's assertion that it would be "overly burdensome and disproportionate to the needs of the case" to order said production, particularly where Defendant has not satisfied its burden as the party resisting discovery.[2] This is because Defendant objects to the temporal scope based upon the allegations in the Complaint, and because the Court does find those allegations support Plaintiff's requested temporal scope.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Consumer Financial Protection Bureau's Motion to Compel Defendant to Respond to Plaintiff's First Request for Production of Documents [DE 39] is **GRANTED**.

2. Defendant shall produce documents responsive to Plaintiff's First Request for Production of Documents [DE 39-1], utilizing Instruction I as modified: "Unless otherwise specified, the relevant time period for which production of Documents is requested shall be from June 5, 2019, to October 10, 2023."

3. Defendant shall produce these documents on or before **March 26, 2024.**

---

[2] The Court also rejects Defendant's attempt to distinguish between the temporal scope of the general instruction and the specific RFPs based upon the argument that Plaintiff's allegations are limited to the 2020 HMDA data Defendant submitted on February 26, 2021 and September 30, 2021.

4. The Court reminds the parties that fact discovery closes in this case on April 18, 2024, and expert discovery on May 2, 2024. *See* DEs 16 at 5; 33 at 4. The parties shall cooperate in good faith to ensure that they comply with these deadlines.

5. In light of the parties' good faith conferral on issues related to the Motion to Compel [DE 39], and in light of Plaintiff not requesting costs in the Motion to Compel [DE 39], the Court finds that an award of expenses would be unjust. Thus, the Court declines to award reasonable expenses, including attorney's fees pursuant to Rule 37(a)(5)(A)(iii) of the Federal Rules of Civil Procedure. However, should Defendant fail to fully and promptly comply with this Order, the Court will revisit the issue of sanctions.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 18th day of March, 2024.

*/s/ William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge