UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**CONSUMER FINANCIAL
PROTECTION BUREAU**,

       *Plaintiff,*

  v.

**FREEDOM MORTGAGE
CORPORATION**,

       *Defendant.*

CASE NO: 9:23-cv-81373-DMM

**DEFENDANT FREEDOM MORTGAGE CORPORATION'S
MOTION TO COMPEL PLAINTIFF TO RESPOND TO INTERROGATORY NO. 6**

## INTRODUCTION

Defendant Freedom Mortgage Corporation (Freedom) requests that this Court compel Plaintiff Consumer Financial Protection Bureau (the CFPB) to fully respond to Interrogatory No. 6 of Freedom's First Set of Interrogatories.  Interrogatory No. 6 (as modified, as described below) asks the CFPB to provide for each covered institution that resubmitted HMDA data since 2019: (1) an anonymized identifier; (2) the date the HMDA data was submitted; (3) the date the HMDA data was resubmitted; (4) the number of changed data entries; and (5) the number of errors in the original HMDA submission (to the extent the CFPB has made such a calculation/determination).[1]  This information is relevant to both how the CFPB views the "gravity of the violation,"  12 U.S.C. § 5565(c)(3)(B), and what sorts of "errors" constitute "violations" (alternatively, what sorts of errors are "bona fide" and therefore not violations), 12 C.F.R. § 1003.6(b).

Despite the clear relevance of this Interrogatory, the CFPB objects and refuses to answer, myopically arguing that the information sought is neither relevant nor

---

[1] The full text of the as-modified Interrogatory No. 6 reads:

6. Since 2019, if any covered institution resubmitted HMDA data, identify the following for each such resubmission:
a. A placeholder identifier instead of providing the name of the covered institution;
b. The date the HMDA data was submitted in accordance with 12 C.F.R. § 1003.5(a)(1)(i);
c. The date the HMDA data was resubmitted;
d. The total number of changes between the submission and the resubmission; and
e. The total number of errors, as that term is used in ¶ 35 of the Complaint, in the original HMDA submission, to the extent that the CFPB previously determined the total number of errors.
For the sake of clarity and to avoid confusion, this Interrogatory only requests information concerning the CFPB's determination of whether an error existed; it does not ask for the CFPB's determination as to whether any error was "bona fide."

Ex. C at 2.

proportional to the needs of the case and baldly asserting the examination and law enforcement investigatory privileges.  Freedom asks this Court to compel an answer.

**BACKGROUND**

If the Court were to find Freedom violated HMDA or Regulation C (which it should not), it would then need to determine whether any civil money penalty should be assessed against Freedom, and if so, in what amount.  *See* 2 U.S.C. § 5565(c).  The "gravity" of any violation found by the Court is one factor in making such a determination.  12 U.S.C. § 5565(c)(3)(B).  Therefore, Freedom seeks discovery of information likely to show the gravity of any violation the Court might find.

One source of that information is the CFPB's record of violations by other covered institutions—at the least, such records may contextualize any violation found against Freedom.  Freedom propounded Interrogatory No. 6 to obtain this information. See Ex. A at 3.  But the CFPB refused to answer and objected on the basis that the information was not relevant or proportional, and due to the bank examination and law enforcement investigatory privileges.  *See* Ex. B at 11-12.

After a video conference between counsel on March 12, 2024, Freedom modified Interrogatory No. 6 to request an anonymized placeholder for each entity's name to address the CFPB's concern that the identity of covered institutions is privileged.  *See* Ex. C at 4.  But even after Freedom's modification, the CFPB still refuses to provide this relevant information.  *See* Ex. D at 2.  Instead, the CFPB asserts that the total number of errors for covered institutions' HMDA data is "confidential and not disclosed to the public," *id.* at 2-3, an objection without support.  The CFPB also asserts undue burden to assess whether each error is "bona fide," even though Freedom has clarified that it does not seek any analysis from the CFPB as to whether any error is "bona fide."  *See* Ex. C at 1-2.  Freedom proposed that the CFPB provide only the number of changed data fields in each resubmission, and the number of total errors only to the extent that the CFPB has already made such a calculation or determination.  *See id.*  Nonetheless, the CFPB

2

still refuses to answer.  *See* Ex. E.[2]  As a result, Freedom seeks a full response to
Interrogatory No. 6, as modified.

## ARGUMENT

By asking for information about covered entities' HMDA violations, Freedom
seeks information well within the scope of discovery: it is asking for information that is
relevant to the gravity of any violation found against it, which must be weighed by the
Court in any assessment of civil money penalties.  This purely factual information is not
subject to either the bank examination privilege or law enforcement privilege.  But even
if the information were privileged, disclosure is appropriate because the information is
vital to this case.

### I.

### THE INFORMATION IS RELEVANT TO MITIGATION OF THE CFPB'S DEMAND FOR RELIEF

Relevant, non-privileged information that is proportional to the needs of the case
is discoverable.  Fed. R. Civ. P. 26(b).  And as this Court recently held, information
about the CFPB's demand for relief *is* relevant.  Dkt. 47 at 11.  The CFPB asks the Court
to impose civil money penalties pursuant to 12 U.S.C. § 5565(c).  That statute requires
the consideration of mitigating factors in connection with the imposition of a civil
money penalty, including "the gravity of the violation."  12 U.S.C. § 5565(c)(3)(B).  One
measure of the gravity of the violation is the context of the error rates of other HMDA-
reporting institutions, so those error rates are relevant to this case.

Furthermore, as explained in Freedom's Motion to Dismiss, HMDA and
Regulation C do not establish any error rate that would constitute a violation of law.
Dkt. 17 at 8-9.  However, the CFPB has designed a process by which mortgage lenders

---

[2] In its March 22 letter, for the first time and without explanation or support, the CFPB
asserts that determining how many institutions resubmitted HMDA data, when, and
the number of changes and errors would also be overly burdensome.  This belated
attempt to avoid discovery with a *post hoc* objection should not be credited.

may resubmit HMDA data to correct any errors in the data they report.  FFIEC HMDA
Examiner Transaction Testing Guidelines (2018).  An examination of the information the
CFPB collected in connection with that process will properly contextualize any error
rate the CFPB is able to establish here.  Because Freedom is only requesting information
the CFPB already has (and which is not available anywhere else), the Interrogatory is in
proportion to the needs of the case.  Interrogatory No. 6 seeks discoverable information.

## II.

### THE INFORMATION SOUGHT BY INTERROGATORY 6 IS NOT PRIVILEGED

The CFPB cannot carry its burden to prove its asserted privileges.  *See Schreiber v.
Soc'y for Sav. Bancorp*, 304 U.S. App. D.C. 173, 11 F.3d 217, 220 (1993) (bank examination
privilege); *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 166 (D.D.C. 2017)
(law enforcement privilege).  It asserts Interrogatory No. 6 seeks "confidential
supervisory information protected by the bank examination privilege and law
enforcement investigatory privilege."  Ex. D at 2.  In support, the CFPB cites only
12 C.F.R. § 1070.2(i)(2), which defines "confidential supervisory information."

But the fact that information might be confidential does not make it privileged.
The bank examination privilege only protects "agency opinions and recommendations
from disclosure; purely factual material falls outside the privilege and, if relevant, must
be produced."  *Schreiber v. Soc'y for Sav. Bancorp*, 304 U.S. App. D.C. 173, 11 F.3d 217, 220
(1993); *see also In re Bankers Tr. Co.*, 61 F.3d 465, 471 (6th Cir. 1995).  Similarly, the law
enforcement privilege does not apply because the information sought does not relate to
"investigation techniques" or reveal CFPB strategy.  *See Otterson v. AMTRAK*, 228 F.R.D.
205, 208 (S.D.N.Y. 2005) (general notes concerning investigation not privileged).

Even if these privileges did apply (they do not), the CFPB's attempt to hide
behind them would still fail.  The CFPB claims privilege only for (1) the names of the
covered institutions; and (2) the number of errors in the credit score and NMLS
identification number data fields.  But Freedom has agreed to the redaction of the name

4

of the covered institutions; and the total number of changes or errors cannot reveal substantive information about borrowers' credit scores or NMLS numbers, even if that information is confidential.  In addition, a protective order has been entered in this case. *See King v. Habib Bank Ltd*., No. 20-CV-4322, 2023 U.S. Dist. LEXIS 228698, at *14-15 (S.D.N.Y. Dec. 22, 2023).  These are not in issue.

Moreover, good cause exists to override the bank examination privilege because (1) the information sought is relevant; (2) the information is not available elsewhere; (3) the seriousness of the litigation weighs against the privilege; (4) the agency asserting the privilege is the plaintiff; and (5) there is no risk of "future timidity" by government employees because the information would be anonymized.  *See Bancor Grp. Inc. v. Rodriguez*, No. 22-cv-20201, 2023 U.S. Dist. LEXIS 181095, at *10 (S.D. Fla. June 13, 2023).

The law enforcement privilege should similarly be overridden because the applicable factors of the balancing test weigh strongly in Freedom's favor: (1) disclosure will not "thwart" CFPB investigations; (2) the data is anonymized; (3) no governmental self-evaluation would be prevented; (4) the information sought is purely factual; (5) the party seeking discovery not a party to the information sought; (6) the CFPB has not asserted any ongoing investigation; (7) the CFPB has not asserted interdepartmental disciplinary proceedings; (8) Interrogatory No. 6 was issued in good faith; and—the two most important factors—(9) the information is vital to a factor relevant to Freedom's defense; and (10) the information is not otherwise available. *Frederic v. United States*, No. 18-cv-62758, 2019 U.S. Dist. LEXIS 244083, at *24-32 (S.D. Fla. Dec. 10, 2019); *see Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of N.Y.*, 194 F.R.D. 88, 96 (S.D.N.Y. 2000).

## CONCLUSION

Interrogatory No. 6 is relevant to both Freedom's ability to show mitigation of any civil money penalty the CFPB may be awarded and its ability to prove a *bona fide* error defense, and it is not privileged because it is purely factual.  Freedom therefore requests that the Court compel the CFPB to answer Interrogatory No. 6, as modified.

## <u>CERTIFICATION OF CONFERRAL</u>

I hereby certify that in compliance with Local Rule 7.1 and paragraph 1 of the Court's Order Setting Discovery Procedure, counsel for Freedom met and conferred with counsel for the CFPB in good faith but were unable to resolve the issues presented in this motion.

Dated:  March 22, 2024                    Respectfully submitted,

By:  _/s/ Herman J. Russomanno III_
Herman J. Russomanno III
Fla. Bar No. 21249
herman2@russomanno.com

RUSSOMANNO & BORRELLO, P.A.
*Local Counsel for Defendant*
*Freedom Mortgage Corporation*
Museum Tower – Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103

Mitchel H. Kider
Timothy P. Ofak
Charlie Cooper
Joseph Katz
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel: (202) 628-2000
Fax: (202) 628-2011
kider@thewbkfirm.com
ofak@thewbkfirm.com
cooper@thewbkfirm.com
katz@thewbkfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 22, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will provide automatic notice to the below listed counsel of record:

Emily Holness
emily.holness@cfpb.gov
Hallie Ryan
hallie.ryan@cfpb.gov
Joseph Lake
joseph.lake@cfpb.gov
Eric Mothander
Charles.mothander@cfpb.gov
Samuel Weinstock
Samuel.weinstock@cfpb.gov
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552


 /s/ *Herman J. Russomanno III*

7