UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-cv-81373-MIDDLEBROOKS/MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU,

    Plaintiff,

v.

FREEDOM MORTGAGE CORPORATION,

    Defendants.

_____/

FILED BY \_\_\_\_SW\_\_\_\_ D.C.

Apr 5, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

### ORDER GRANTING DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO INTERROGATORY NO. 6 [DE 52]

**THIS CAUSE** is before the Court upon the following: (1) Defendant Freedom Mortgage Corporation's ("Defendant" or "Freedom") Motion to Compel Plaintiff to Respond to Interrogatory No. 6 ("Motion") [DE 52]; (2) Plaintiff Consumer Financial Protection Bureau's ("Plaintiff" or "CFPB") Response in Opposition [DE 56]; and (3) Defendant's Reply [DE 58]. The Motion was referred to the Undersigned by the Honorable Donald M. Middlebrooks, United States District Judge. [DE 40]. The Motion is fully briefed and ripe for review.

### I. BACKGROUND[1]

On October 10, 2023, Plaintiff filed a Complaint against Defendant "under the Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5564(a), and the Home Mortgage Disclosure Act (HMDA), 12 U.S.C. § 2804(b)(1)(B), (d), and its implementing regulation, Regulation C, 12

---

[1] The Background in this Order is included verbatim from the Court's Order Granting Plaintiff Motion to Compel Defendant to Respond to Plaintiff's First Request for Production of Documents at DE 47. The Court assumes the parties' familiarity with prior Orders. Nonetheless, the Background is again included for clarity.

1

C.F.R. § 1003." [DE 1 at 1]. Plaintiff alleges that Defendant, "one of the nation's largest non-bank mortgage lenders, has been required to collect and annually report to the government mortgage loan data under HMDA and Regulation C since at least 2014." [DE 1 at 2 ¶ 3]. In this regard, "[i]n 2019, [Plaintiff] found that [Defendant] had violated HMDA by intentionally misreporting data concerning borrower race, ethnicity, and sex from 2014–2017." *Id.* Thus, Plaintiff alleges that it "agreed to resolve these findings through a consent order (2019 Order) requiring [Defendant] to pay a civil money penalty, comply with HMDA, and undertake other corrective actions, including developing and improving its HMDA policies and procedures." *Id.*

However, Plaintiff alleges that "[t]he 2019 Order did not mark the end of [Defendant's] HMDA failures." *Id.* at ¶ 4. Rather, Defendant's "February 25, 2021 submission of its 2020 HMDA data to [Plaintiff] was filled with errors," and Defendant's "violations continued because of pervasive deficiencies in its policies, procedures and systems to collect and report HMDA data and because, despite knowing its systems were faulty, it failed to implement adequate changes to its HMDA compliance management system to ensure the accuracy of its HMDA data." *Id.* at ¶¶ 4–5. Accordingly, Plaintiff's Complaint alleges three counts against Defendant—violations of HMDA and Regulation C ("Count I"); violations of the 2019 Order ("Count II"); and violations of the CFPA ("Count III"). *Id.* at 7–9.

## II. MOTION, RESPONSE, AND REPLY

A. <u>Defendant's Motion to Compel [DE 52]</u>

Defendant seeks an Order compelling Plaintiff to fully respond to Interrogatory No. 6, as modified.[2] [DE 52 at 2]. According to Defendant, the information sought as part of Interrogatory No.

---

[2] Here, Interrogatory No. 6 (as modified), states as follows:

2

6 is "relevant to both how the CFPB views the 'gravity of the violation,' 12 U.S.C. § 5565(c)(3)(B), and what sorts of 'errors' constitute 'violations' (alternatively, what sorts of errors are 'bona fide' and therefore not violations), 12 C.F.R.§ 1003.5(a)(1)(i)." *Id.*

More specifically, Defendant notes that, if the Court were to find that Defendant violated HMDA or Regulation C, "it would then need to determine whether any civil money penalty should be assessed against Freedom, and if so, what amount." *Id.* at 3. Because the gravity of "any violation found by the Court is one factor in making such a determination," Defendant seeks information through Interrogatory No. 6 that would tend to show the gravity of any violation the Court might find. *Id.* According to Defendant, "[o]ne source of that information is the CFPB's record of violations by other covered institutions," as such records may "contextualize any violation found against Freedom." *Id.* Defendant thus maintains that Interrogatory No. 6—as modified after March 12, 2024—is appropriate and also addresses Plaintiff's privilege concerns. *See id.* at 3–4.

---

Since 2019, if any covered institution resubmitted HMDA data, identify the following for each such resubmission:

  a. A placeholder identifier instead of providing the name of the covered institution;
  b. The date the HMDA data was submitted in accordance with 12 C.F.R. § 1003.5(a)(1)(i);
  c. The date the HMDA data was resubmitted;
  d. The total number of changes between the submission and the resubmission; and
  e. The total number of errors, as that term is used in ¶ 35 of the Complaint, in the original HMDA submission, to the extent that the CFPB previously determined the total number of errors.

For the sake of clarity and to avoid confusion, this Interrogatory only requests information concerning the CFPB's determination of whether an error existed; it does not ask for the CFPB's determination as to whether any error was "bona fide."

[DE 52-3 at 3].

As summarized by Defendant, "Freedom seeks information well within the scope of discovery: it is asking for information that is relevant to the gravity of any violation found against it, which must be weighed by the Court in any assessment of civil money penalties. This purely factual information is not subject to either the bank examination privilege or law enforcement privilege." *Id.* at 4. With respect to relevancy, Defendant argues that the information requested is relevant to show if any civil money penalty tied to Plaintiff's demand for relief. *Id.* at 4–5. And as to privilege, Defendant argues that neither the bank examination privilege nor the law enforcement privilege is applicable. *Id.* at 5–6. But even assuming they do apply, Defendant notes that a protective order has been entered in this case and that it has agreed to several redactions. *Id.* Defendant also argues that good cause exists to override those privileges. *Id.* at 6.

B. Plaintiff's Response [DE 56]

According to Plaintiff, the "compilation and production of extensive data about nonparty supervised entities' HMDA data submissions" is irrelevant, burdensome, and protected "by the attorney-client, bank examination, law enforcement, and deliberate process privileges." [DE 56 at 2].

As to relevancy, Plaintiff argues that "the nature of a nonparty entity's HMDA submission or resubmission is simply not relevant to whether *Freedom* violated the HMDA." *Id.* On this matter, Plaintiff argues that "[w]hether other institutions resubmitted HMDA data provides no insight into the individualized factors that will inform this Court's determination of an appropriate penalty, including Freedom's history of HMDA violations, the adequacy of its compliance systems, or any other factor relevant to that assessment." *Id.* at 4.

With respect to burdensomeness, Plaintiff contends that "requiring the [CFPB] to identify whether any of the thousands of institutions who submitted and then resubmitted HMDA data to the [CFPB] since 2019 . . . is not in any way relevant or proportional to the needs of this case." *Id.* at 2–3. Plaintiff states that "Defendant's interrogatory requires the [CFPB] to identify all HMDA resubmissions among the well over 4,000 institutions submitting data each year since 2019." *Id.* at 4. And then, Plaintiff contends it would "need to individually compare each of those files— comprised of, for certain entities, over a million rows of data—with the entity's initial submission, and then calculate the number of changes across approximately 100 data fields." *Id.* at 5.

And finally, even assuming that Interrogatory No. 6 *is* relevant and proportional to the needs of the case, Plaintiff argues that "the request seeks information about the [CFPB's] internal evaluation of other institutions that is protected from disclosure by the attorney-client, bank examination, law enforcement, and deliberate process privileges." *Id.* at 3. According to Plaintiff, "[a]ny prior analysis of errors in other filers' submissions, . . . would be intertwined with the [CFPB's] attorney-led investigatory process and fall within the attorney-client and law enforcement privileges." *Id.* at 5. Moreover, "[t]o the extent any prior analysis of nonparty submissions was conducted pursuant to the [CFPB's] supervisory process, such information would be protected by the bank examination privilege," as it would "entail 'communication between the regulated [institution] and the . . . regulatory agency' regarding the agency's 'opinions or recommendations.'" *Id.* at 6 (quoting *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 633–34 (D.C. Cir. 1992) (alteration in original)). And, considering the "detailed statutory and regulatory framework governing the public disclosure of HMDA data, the

5

[CFPB's] internal, uncommunicated evaluations of submissions are part of the agency's policymaking process and protected by the deliberative process privilege." *Id.*

C. Defendant's Reply [DE 58]

Defendant begins by arguing that other institutions' errors are relevant to the "gravity of the violation," citing to 12 U.S.C. § 5565(c)(3)(B). [DE 58 at 2]. According to Defendant, CFPB "alleged that Freedom reported its initial 2020 HMDA data at a *99.77% accuracy rate*," and that, despite this high accuracy rate and CFPB's acknowledgement that errors are unavoidable, "the CFPB seeks to impose significant penalties for *each and every error* that it can prove existed in Freedom's initial 2020 HMDA submission." *Id.* Defendant therefore argues that gravity—as a relative factor—requires context, and that a proper point of comparison is "the total number of data fields changed and errors for other institutions that resubmitted HMDA data during the relevant time." *Id.* at 2–3. Indeed, Defendant argues it would be unjust to penalize it in the event the number of errors it committed is comparable to the number of errors committed by other financial institutions. *Id.* at 3.

Next, Defendant argues that the CFPB's "eleventh-hour" burdensomeness objection is unsupported, as the CFPB "did not cite or explain any burden, except by obliquely referencing proportionality." *Id.* at 4. In this regard, Defendant recites the history of the parties' dispute, arguing that the CFPB "should not be permitted to constantly move the goalposts in response to Freedom's good-faith efforts to avoid filing this motion." *Id.* at 4–5.

Finally, Defendant contends that "Interrogatory No. 6 seeks non-privileged, purely factual information,"—specifically, the CFPB's recordation of errors, not the agency's opinions or recommendations, or any analysis. *Id.* at 5. Moreover, Defendant maintains that the "CFPB . . .

6

fails to address Freedom's argument that confidentiality is not privilege, and that the Court's Protective Order . . . sufficiently protects the confidentiality of the information." *Id.* at 6. But even assuming privilege exists, Defendant argues that the CFPB "has not addressed the other factors pertinent to overriding privilege, which weigh in Freedom's favor." *Id.*

### III.     ANALYSIS AND RULINGS

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery as "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering the importance of the issues at stake, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, and whether the burden of the discovery outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1). "It is well established that the courts must employ a liberal standard in keeping with the purpose of the discovery rules." *Davis v. Nationwide Ins. Co. of Am.*, No. 19-cv-80606, 2020 WL 7480819, at *3 (S.D. Fla. Dec. 18, 2020). To this end, "the burden of showing that the requested discovery is not relevant to the issues in the case is on the party resisting discovery." *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001).

However, Rule 26(b) allows discovery "through increased reliance on the commonsense concept of proportionality." *In re: Takata Airbag Prod. Liab. Litig.*, 15–2599–MD, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, 2075 *Year–End Report on the Federal Judiciary* 6 (2015)); *Reuter v. Physicians Cas. Risk Retention Grp.*, No. 16-80581-CV, 2017 WL 395242, at *2 (S.D. Fla. Jan. 27, 2017). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Office Depot, Inc. v. Elementum Ltd.*, No. 19-CV-81305, 2020 WL 5506445, at *3 (S.D.

Fla. Sept. 14, 2020) (citing *Tiger v. Dynamic Sports Nutrition, LLC*, Case No. 15-cv-1701, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016)).

Here, Interrogatory No. 6 (as modified), states as follows:

6. Since 2019, if any covered institution resubmitted HMDA data, identify the following for each such resubmission:

   a. A placeholder identifier instead of providing the name of the covered institution;
   b. The date the HMDA data was submitted in accordance with 12 C.F.R. § 1003.5(a)(1)(i);
   c. The date the HMDA data was resubmitted;
   d. The total number of changes between the submission and the resubmission; and
   e. The total number of errors, as that term is used in ¶ 35 of the Complaint, in the original HMDA submission, to the extent that the CFPB previously determined the total number of errors.

For the sake of clarity and to avoid confusion, this Interrogatory only requests information concerning the CFPB's determination of whether an error existed; it does not ask for the CFPB's determination as to whether any error was "bona fide."

[DE 52-3 at 3]. Based upon this interrogatory (as modified), Plaintiff now objects on relevancy, burdensomeness, and privilege grounds. The Court will address each ground.

   A. <u>Relevancy</u>

Pursuant to 12 U.S.C. § 5565(c)(1), "[a]ny person that violates, through any act or omission, any provision of Federal financial consumer financial law shall forfeit and pay a civil penalty . . . ." In determining the penalty amount, the "Bureau or court shall take into account the appropriateness of the penalty with respect to . . . the gravity of the violation or failure to pay." 12 U.S.C. § 5565(c)(3)(B). It is Defendant's position that the number of errors from other institutions is relevant when determining the gravity of Defendant's purported violations. CFPB, on the other hand, argues that data pertaining to other institutions is irrelevant when determining the gravity of

8

the violation, as civil money penalties involve an "individualized assessment."

Here, the Court finds that other institutions' errors are relevant to the gravity of Defendant's purported violations. Indeed, as noted by Defendant, "[i]t would be unjust to penalize Freedom harshly for its errors, if the number of errors proved by the CFPB is similar to or less than those of other financial institutions." [DE 58 at 3]. While the gravity of any violation could certainly also refer to the egregiousness of that violation (and thereby involve a more individualized assessment), that does not render the error rates of other institutions irrelevant. Thus, because the Court has already found discovery tied to Plaintiff's demand for relief relevant and proportional to the needs of the case, *see* DE 47 at 11, Plaintiff's objections based on relevancy are OVERRULED.

B. <u>Burdensomeness</u>

"[C]laims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *Bank of Mongolia v. M & P Glob. Fin. Servs., Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009). In fact, "[a] party objecting to discovery on the basis of undue burden or overbreadth must generally support the assertion with affidavits or other evidence." *Commodity Futures Trading Comm'n v. United Invs. Grp., Inc.*, No. 05-80002-Civ, 2006 WL 8446782, at *2 (S.D. Fla. Feb. 27, 2006).

Here, despite a purportedly amorphous burdensomeness objection (which also appears to partially be an objection based on proportionality), Plaintiff has failed to attach any supporting affidavit. Therefore, the Court rejects Plaintiff's claims of undue burden, and Plaintiff's objections based on burdensomeness are necessarily OVERRULED. Further, to the extent Plaintiff instead objects based on the proportionality of Interrogatory No. 6 (as modified), the Court also OVERRULES those objections, based upon Defendant's representation that Interrogatory No. 6

9

does not seek any bona fired error analysis. *See* DE 58 at 3.

C. <u>Privilege</u>

Plaintiff objects based upon attorney-client, bank examination, law enforcement, and deliberative process privileges. According to Plaintiff, responding to the total number of errors in the original HMDA submission and the total number of changes between the submission and the resubmission would "necessarily contain the [CFPB's] own determination of where changes and errors occurred in submissions and resubmissions" because HMDA data files contain no field for "changes" or "errors." [DE 56 at 5]. Defendant, however, maintains that "the information sought is the CFPB's *recordation* of errors," not the agency's opinions or recommendations, or any analysis. [DE 58 at 5].

Here, the Court summarily rejects Plaintiff's privilege objections. Defendant is seeking factual information surrounding the number of changes made between submission and resubmission of HMDA data, and the total number of errors. This information does not implicate attorney-client privilege, or the bank examination, law enforcement, or deliberate process privileges, as it involves a comparison of data. Indeed, assuming comparing the error rates is as simple as Defendant suggests, if Plaintiff's position is that that the comparison of data itself constitutes a privileged analysis, Rule 33(d) would seem to provide an adequate avenue of relief. Moreover, Defendant "has agreed to the redaction of the name of the covered institutions," DE 52 at 5–6, and a protective order exists in this case. *See* DE 38. And, Plaintiff has failed to sufficiently respond to Defendant's argument that good cause exists to override any applicable privilege in this case. Accordingly, Plaintiff's privilege objections are OVERRULED.

## IV.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Freedom Mortgage Corporation's Motion to Compel Plaintiff to Respond to Interrogatory No. 6 [DE 52] is **GRANTED**.

2. Plaintiff shall respond to Interrogatory No. 6 (as modified) [DE 52-3 at 3] on or before **April 15, 2024.** To the extent Plaintiff represents that there are "well over 4,000 institutions submitting data each year since 2019," the Court trusts that the parties will cooperate in good faith regarding the requested discovery, including utilizing any appropriate data sampling.

3. The Court again reminds the parties that fact discovery closes in this case on April 18, 2024, and expert discovery closes on May 2, 2024. *See* DEs 16 at 5; 33 at 4. The parties shall ensure that they comply with these deadlines.

4. The Court finds that an award of expenses would be unjust. Thus, the Court declines to award reasonable expenses, including attorney's fees pursuant to Rule 37(a)(5)(A)(iii) of the Federal Rules of Civil Procedure.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 5th day of April, 2024.

WILLIAM MATTHEWMAN
United States Magistrate Judge