# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

Case No. 9:23-cv-81373- MIDDLEBROOKS-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU
Plaintiff,

vs.

FREEDOM MORTGAGE CORPORATION,
Defendant.

_____/

# PLAINTIFF'S MOTION TO EXCLUDE
# EXPERT TESTIMONY OF HEIDI WIER

## INTRODUCTION

The Consumer Financial Protection Bureau (Bureau) respectfully moves this Court to exclude the testimony of Heidi Wier as an expert witness for Defendant Freedom Mortgage Corporation (Freedom). The Court should exclude Ms. Wier's testimony because her opinions are irrelevant, unreliable, and would mislead a trier of fact. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ms. Wier's methodology is inherently unreliable and therefore fails to meet the requirements of Rule 702. Freedom cannot meet its burden of demonstrating that Ms. Wier's evidence is admissible, and her testimony should be excluded.

## BACKGROUND

The Bureau alleges that Freedom's February 26, 2021 submission of its 2020 HMDA data contained widespread and significant errors. *See* Compl. ¶ 18. The Bureau further alleges that these errors are not "bona fide" because Freedom did not maintain a HMDA compliance management system with procedures reasonably adapted to avoid those errors at the time of its submission. *See id*. ¶¶ 22–28. Accordingly, the Bureau alleges, Freedom's 2020 reporting errors violated HMDA and Regulation C. *See id*. ¶¶ 29–35.[1] As the Bureau's 2015 HMDA Final Rule amending Regulation C makes clear, "The accuracy of HMDA data depends on good operational and validation processes. Financial institutions . . . must develop and maintain appropriate compliance management systems that are reasonably designed to ensure the accuracy of the data."

---

[1] The Bureau has further alleged that Freedom violated § 1036(a)(1)(A) of the CFPA, 12 U.S.C. § 5536(a)(1)(A), by virtue of its violations of HMDA and Regulation C, as well as its violation of a 2019 Bureau Consent Order, which prohibited Freedom from violating specific HMDA and Regulation C provisions. *See id*. ¶¶ 36–45.

*See* Home Mortgage Disclosure (Regulation C), 80 Fed. Reg. 66128, 66255 (Oct. 28, 2015). Thus, to the extent an expert opinion would assist the trier of fact to understand the evidence or determine a fact in issue related to compliance management systems in a case arising under HMDA or Regulation C, it should relate to that institution's HMDA compliance management systems, and related policies, procedures, and controls.

███████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████ In 2021, Ms. Wier wrote an article titled "Four Pillars of an Effective HMDA Compliance Program," which makes clear that in Ms. Wier's view, "Implementing a strong, comprehensive HMDA compliance program will help ensure the accuracy of your HMDA data[.]" Ex. B, Four Pillars of an Effective Compliance Program, as published in *ABA Bank Compliance* (July/August 2021) at 1. According to her article, the core "pillars" of an effective HMDA compliance program include: (i) board and management oversight; (ii) policies and procedures; (iii) training; and (iv) monitoring and reporting. *Id.*

███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████████████
████████████████████████

The Bureau deposed Ms. Wier on May 2, 2024. Ms. Wier testified that she was asked to opine "[b]asically whether or not Freedom's procedures, policies and procedures, were reasonably adapted to avoid errors." Ex. C, Deposition of Heidi Wier (May 2, 2024) 27:8–10. Ms. Wier testified that she: (1) had "one short conversation"

2

with Freedom's Chief Compliance Officer Cynthia Berman to confirm that in 2020, Freedom used a third-party monitoring software called QuestSoft to monitor its HMDA data, *see id*. 23:8–12, 24:1–8, 40:7–14; █████████████████████████
████████████████████████████████████ ██████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████

Regarding those three procedures, Ms. Wier testified that she made no inquiry into: ████████████████████████████████████████████████
██████ (2) whether employees received training on them, *see id*. 37:14–17; or (3) ████████████████████████████████████████████████████
████████████████████████████████ Ms. Wier ignored the remaining "pillars" she previously cited in her 2021 article as the foundation for an effective HMDA compliance program—board and management oversight, training, and monitoring and reporting—in formulating her opinions, other than confirming that Freedom had some kind of monitoring system in place. *See id*. 36:13–23; 37:9–20; 40:1–41:12.
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████ ██████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

### LEGAL STANDARD

"The framework set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) governs the admissibility of expert testimony." *Wopshall v. Travelers Home & Marine Ins. Co.*, No. 21-14390-CV, 2022 WL 2805344, at *1 (S.D. Fla. June 22, 2022). Expert testimony is admissible where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on

3

sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. In the Eleventh Circuit, courts engage in a three-part inquiry to determine the admissibility of expert testimony under Rule 702, considering (1) the expert's qualifications; (2) the reliability of the expert's methodology under *Daubert*, and (3) whether "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Quiet Tech. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340–41 (11th Cir. 2003).

"The inquiry envisioned by Rule 702 is a flexible one, in which federal judges perform a 'gatekeeping role' to ensure that speculative and unreliable opinions do not reach the jury." *Wopshall*, 2022 WL 2805344, at *2 (citing *Daubert*, 509 U.S. at 594–95, 597). Accordingly, it is within the Court's discretion to exclude expert testimony and data when there "is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The party seeking to introduce the expert testimony bears the burden of demonstrating its admissibility by a preponderance of proof. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262.

## ARGUMENT

### I. MS. WIER'S OPINION ███████ AND THEREFORE WOULD MISLEAD THE TRIER OF FACT

███████

"[S]peculations, ungrounded in fact and disconnected from a reliable basis, are not reliable opinions." *United States v. McCarthy Improvement Co.*, No. 3:14-CV-919-J-PDB, 2017 WL 443486, at *15 (M.D. Fla. Feb. 1, 2017). ███████

4

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████████ This approach is both misguided and grounded in speculation. ████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
█████████████████████████████████████████ That is not evidence of anything relevant to this case against Freedom, let alone a defense to its liability under HMDA and Regulation C.

LAR revisions at other institutions are simply not relevant to a factfinder's determination regarding whether Freedom's 2020 HMDA reporting errors were violations of HMDA and Regulation C.[2] *See, e.g.*, *Moog Indus., Inc. v. FTC*, 355 U.S. 411, 412–14 (1958) (holding that the FTC's cease-and-desist order was valid, notwithstanding that the FTC had not yet pursued action against others in the industry); *FTC v. Chemence, Inc.*, 209 F. Supp. 3d. 981, 985–86 (N.D. Ohio 2016) (rejecting the "everybody else is doing it" justification and finding information related to other industry participants was irrelevant as defense to liability); *CFPB v. Navient Corp.*, No. 3:17-CV-101, 2018 WL 2088760, at *5–7 (M.D. Pa. May 4, 2018) (rejecting Defendant's contention that practices of others in its industry was relevant to the reasonableness of Defendant's conduct).

---

[2] As the Magistrate has already ruled, other institutions' reporting errors are, at most, relevant only to show the gravity of Freedom's HMDA violations, for the purpose of determining a civil money penalty pursuant to 12 U.S.C. § 5565(c)(3). Dkt. 59 at 9. The Bureau disputes the admissibility of such evidence at trial but, in any event, ████████ ████████████████████████████████████████████████████████ should be excluded under Rule 702(a).

5

Ms. Wier's opinion ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is misguided and does not aid the trier of fact in determining any fact at issue. *See* Fed. R. Evid. 702(a). Far from it: particularly if this case is tried before a jury, Ms. Wier's opinion ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will confuse the issues and should therefore be excluded under Fed. R. Evid. 403. *See Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (holding exclusion under Rule 403 applicable "[b]ecause of the powerful and potentially misleading effect of expert evidence").

## II.    MS. WIER'S METHODOLOGY IS UNRELIABLE

### A.    Ms. Wier's Opinion Ignores Evidence in the Record.

Rule 702(b) requires expert testimony to be based on sufficient facts or data, and Ms. Wier's opinion also fails this test. *See, e.g.*, *Pierson v. Orlando Health*, No. 6:08–cv–466, 2010 WL 3447496, at *3 (M.D. Fla. Aug. 30, 2010) (excluding expert's opinion because he "made assumptions and selectively chose data, rendering his opinions unreliable"). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮n.

Even assuming Ms. Wier's 2021 article is the correct standard by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ms. Wier begins her 2021 article by stating, "Implementing a strong, comprehensive HMDA compliance program will help ensure the accuracy of your HMDA data[.]" Ex. B at 1.[3] Despite her own articulation of this standard, Ms. Wier testified in this case that Freedom's HMDA compliance management system was *not* relevant to the question of whether it maintained procedures reasonably adapted to avoid the inaccuracies in its 2020 HMDA data. Ex. C 94:13–16 ("I don't think the CMS is relevant here. It's not—the components of the CMS are not all relevant to determine whether or not the procedures

---

[3] Ms. Wier also describes the four pillars in her article as "The foundation, or core pillars, of an effective HMDA compliance program." *See* Ex. B at 1.

were reasonably adapted."); 134:11–135:12 ("I chose not to look at the CMS because I didn't think it was all relevant to the objective of the assignment.").

Further, in her 2021 article, Ms. Wier wrote that an institution's "board is ultimately responsible for administering an effective program that ensures accurate HMDA data and must be apprised of the institution's efforts to comply with HMDA and fair lending requirements." Ex. B at 1. Nevertheless, Ms. Wier did not consider evidence concerning board and management oversight at Freedom for her inquiry in this case. Ex. C 36:13–16.



The same is true with training, which Ms. Wier previously cited in her 2021 article as another "pillar" for an effective HMDA compliance program. Ms. Wier previously wrote, "Personnel involved in the HMDA process should receive periodic training on the technical requirements of collecting HMDA data as well as the institution's specific procedures." Ex. B at 3. But Ms. Wier did not evaluate Freedom's HMDA training program in the development of her opinion here. Ex. C 37:14–17.

Similarly, in her 2021 article Ms. Wier discussed "monitoring and reporting" as a pillar of an effective HMDA compliance program. Ex. B at 4. In that article, Ms. Wier described various facets to "monitoring and reporting," including a "lending summary," "reconciliation/omissions testing," and "transaction testing," which, she writes, "ideally

7

should include both manual file reviews and systemic data integrity testing." *Id.* at 3–4. In her deposition, however, Ms. Wier testified that, beyond her single conversation with one Freedom employee and her review of Freedom's responses to the Bureau's CID, Ms. Wier did not conduct any review of Freedom's HMDA monitoring. Ex. C 40:1–41:12; 42:2–25. Ms. Wier ignored ample evidence that a manual file review could have helped Freedom detect errors prior to its filing of the 2020 LAR (specifically, the Bureau's 2021 manual file review of 159 loan files reported in Freedom's 2020 LAR that detected 51 errors, *see* Compl. ¶ 20), stating instead that she believed a manual file review based on a sample of loan files had "limited usefulness" given the size of Freedom's LAR. Ex. C 53:22–25. But in her own article, Ms. Wier noted that "sample sizes to be tested can be based on a statistical sampling methodology, and easily determined using a statistical sample calculator found on the internet." Ex. B at 4. In direct contrast to her claim of "limited usefulness" in this case, Ms. Wier wrote that "sufficient transaction testing should provide good insights into the accuracy of your data," and that "Manual reviews may also identify potential concerns that may not be detected during a systemic review." *Id.* at 5.

Ms. Wier also discussed policies and procedures as another HMDA compliance "pillar," writing that policies and procedures "should provide the guiding principles and detailed guidance for the institution" and that "HMDA-related procedures should be comprehensive." *Id.* at 1. █████████████████████████████

█████████████ Ms. Wier testified that "there were a few additional procedures that I was provided initially that I reviewed at a cursory level and ultimately decided they weren't pertinent." Ex. C 26:8-11. ████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[4] ████████████████████████████████████████████████
████████████████████████████

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

At bottom, an expert's opinion is not reliable, and therefore not admissible, when the expert selectively uses record evidence to benefit the party proffering the expert. *See, e.g., In re Zantac (Ranitidine) Prod. Liab. Litig.*, 644 F. Supp. 3d 1075, 1158 (S.D. Fla. 2022) ("Courts have held that [ ] cherry-picking of data demonstrates unreliability[.]").
█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████ For this reason, Ms. Wier's opinion does not meet the requirements of Rule 702(b) and should be excluded.

B. ████████████████████████████████████████████ is Not an Industry Standard.

"Expert testimony that is not 'the product of reliable principles and methods' is not admissible under Federal Rule of Evidence 702(c)." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, No. 16-21203-CIV, 2018 WL 10322164, at *11 (S.D. Fla. Jan. 13, 2018). ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████ Such methodological shortcomings render Ms. Wier's opinion concerning this key issue—underpinning Freedom's liability under HMDA and Regulation C—inherently unreliable. Ms. Wier's opinion thus fails to meet the requirements of Rule 702(c).

## CONCLUSION

For the foregoing reasons, the Bureau respectfully moves the Court to exclude the proposed expert testimony offered by Ms. Wier.

Dated: May 16, 2024                                     Respectfully Submitted,

/s/ Emily Holness
Emily Holness
Special Florida Bar ID A5503128
New York Bar No. 4947941

Charles Mothander
Special Florida Bar ID A5503180
DC Bar No. 1032539

Hallie Ryan
Special Florida Bar ID A5503127
Virginia Bar No. 85927

Joseph Lake
Special Florida Bar ID A5503154
California Bar No. 246679

Samuel Weinstock
Special Florida Bar ID A5503195
Maryland Bar No. 2211290261

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW Washington, DC 20552

Email: emily.holness@cfpb.gov
Email: charles.mothander@cfpb.gov
Email: hallie.ryan@cfpb.gov
Email: joseph.lake@cfpb.gov
Email: samuel.weinstock@cfpb.gov

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 16, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will provide automatic notice to the below listed counsel of record.

    Herman J. Russomanno III
    RUSSOMANNO & BORRELLO, P.A.
    Museum Tower – Penthouse
    2800 150 West Flagler Street
    Miami, Florida 33130
    Telephone: (305) 373-2101
    Facsimile: (305) 373-2103
    Herman2@russomanno.com

    Mitchel H. Kider
    Timothy P. Ofak
    Charles Cooper
    Joseph M. Katz
    WEINER BRODSKY KIDER PC
    1300 19th Street NW, Fifth Floor
    Washington, DC 20036
    Tel: (202) 628-2000
    Fax: (202) 628-2011
    kider@thewbkfirm.com
    ofak@thewbkfirm.com
    cooper@thewbkfirm.com
    katz@thewbkfirm.com

                                          /s/ Emily Holness
                                                Emily Holness
                              Special Florida Bar ID A5503128
                                      New York Bar No. 4947941