UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:23-cv-81373- MIDDLEBROOKS-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU
Plaintiff,

vs.

FREEDOM MORTGAGE CORPORATION,
Defendant.

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE LEGAL OPINION TESTIMONY OF MICHAEL WALLACE**

## INTRODUCTION

Defendant Freedom Mortgage Corporation (Defendant) seeks to exclude the purported "legal opinion" of the Consumer Financial Protection Bureau's (Bureau) rebuttal expert, longtime fair lending examiner Michael Wallace. But Defendant mischaracterizes and distorts Mr. Wallace's report and testimony, which has nothing to do with what constitutes a violation of the Home Mortgage Disclosure Act (HMDA) or its implementing Regulation C. In reality, Mr. Wallace was retained by the Bureau to rebut the testimony of Defendant's proffered expert, Heidi Wier, who has opined that Defendant maintained procedures reasonably adapted to avoid the widespread errors in the 2020 HMDA data it submitted to the Bureau. Mr. Wallace's testimony—applying a time-honored and uniformly-accepted consumer compliance rating system—will reflect his assessment that, based on the clear and numerous deficiencies he identified in Defendant's HMDA compliance management system (CMS), Defendant did not maintain reasonable procedures to avoid its reporting errors. His expert testimony falls squarely within the acceptable parameters of Federal Rule of Evidence 702.

Critically, Defendant does not move to categorically exclude Mr. Wallace from testifying as an expert, or from rebutting Ms. Wier's testimony. Nor does Defendant challenge the validity of his opinions concerning the many deficiencies in Defendant's CMS, and whether Defendant's procedures were adequately designed to avoid errors. It will be for the jury to then determine whether each of the numerous reporting errors admitted to by Defendant were bona fide, meaning that "the error was unintentional and occurred despite the maintenance of procedures reasonably adapted to avoid such an error." 12 C.F.R. § 1003.6(b)(1).

1

## BACKGROUND

Defendant has admitted to making over 155,000 errors in reporting its 2020 HMDA data. *See* Dkt. 85 at 6. The Bureau alleges that none of those errors were bona fide. *See* Dkt. 1 at ¶¶ 22–28. Should the Court permit Defendant's expert Ms. Wier to testify, the Bureau will proffer Mr. Wallace to rebut her testimony by explaining, based on his decades of HMDA experience and review of all facets of Defendant's HMDA CMS, that Defendant did not maintain procedures reasonably adapted to avoid the errors in its 2020 HMDA data.

Mr. Wallace spent nearly two decades as an examiner and supervisory examiner—first with the State of Arkansas, and then at the Federal Reserve Banks of Dallas and St. Louis. Dkt. 93-1, Ex. A to Def.'s Motion, Expert Report of Michael Wallace (Wallace Report) at 3–4. After leaving government, Mr. Wallace opened his own firm providing compliance consulting for financial institutions in HMDA and other fair lending laws. *Id.* Mr. Wallace's experience includes analyzing institutions' CMS as well as ensuring the accuracy of their HMDA data, *see id.*, and Defendant does not challenge Mr. Wallace's qualifications to testify as an expert.

Mr. Wallace analyzed Defendant's CMS by applying the Uniform Interagency Consumer Compliance Rating System ("CC Rating System") used by examiners and promulgated by the Federal Financial Institutions Examination Council ("FFIEC").[1] Dkt. 93-1, Wallace Report at 8–11. The CC Rating System's criteria are as follows:

---

[1] The FFIEC is a formal interagency body empowered to prescribe uniform principles, standards, and report forms for the federal examination of financial institutions by the Board of Governors of the Federal Reserve System (FRB), the Federal Deposit Insurance Corporation (FDIC), the National Credit Union Administration (NCUA), the Office of the Comptroller of the Currency (OCC), and the Office of Thrift Supervision (OTS) and to make recommendations to promote uniformity in the supervision of financial institutions. *See* https://www.ffiec.gov/.

| Table 1: *CC Rating System* – CMS Pillars and Assessment Factors ||
| CMS Pillar | Assessment Factors |
|---|---|
| Board and Management Oversight | 1) oversight of and commitment to the institution's CMS; <br> 2) effectiveness of the institution's change management processes, including responding timely and satisfactorily to any variety of change, internal or external, to the institution; <br> 3) comprehension, identification, and management of risks arising from the institution's products, services, or activities; and <br> 4) self-identification of consumer compliance issues and corrective action undertaken as such issues are identified. |
| Compliance Program | 1) whether the institution's policies and procedures are appropriate to the risk in the products, services, and activities of the institution; <br> 2) the degree to which compliance training is current and tailored to risk and staff responsibilities; <br> 3) the sufficiency of the monitoring and, if applicable, audit to encompass compliance risks throughout the institution; and <br> 4) the responsiveness and effectiveness of the consumer complaint resolution process. |
| Violations of Law and Consumer Harm | 1) the root cause, or causes, of any violations of law identified during the examination; <br> 2) the severity of any consumer harm resulting from violations; <br> 3) the duration of time over which the violations occurred; and <br> 4) the pervasiveness of the violations. |

*See* Federal Financial Institutions Examination Council, Docket No. FFIEC-2016-0003, CC Rating System, effective March 31, 2017, CFPB-004213, https://www.ffiec.gov/press/PDF/FFIEC_CCR_SystemFR_Notice.pdf.

To analyze Defendant's HMDA CMS, Wallace reviewed a comprehensive set of materials including all of Defendant's procedures relevant to HMDA, correspondence among Defendant's compliance personnel, internal audit documents, Defendant's 2020 HMDA data, and Defendant's responses to the Bureau's Civil Investigate Demand and litigation discovery requests. *See* Ex. A, Appendix A to Wallace Report, Documents Reviewed by Wallace. Defendant's proffered expert Ms. Wier, on the other hand, created her own novel and untested methodology of comparing HMDA error rates among institutions and reviewed only three of

3

Defendant's HMDA-related procedures. *See* Dkt. 83, Bureau's Motion to Exclude Expert Testimony of Heidi Wier at 2–3.

Based on his experience and the materials he reviewed, Mr. Wallace determined there were extensive deficiencies in Defendant's HMDA CMS. Dkt. 93-1, Wallace Report at 13–31. Among the shortcomings identified by Mr. Wallace were: inadequate board oversight, failure to identify root causes of errors, deficient policies and procedures, lack of training, and insufficient monitoring and auditing. *Id.* Mr. Wallace also determined that Defendant's HMDA reporting errors were pervasive, and attributable to approximately a dozen different root causes. *Id.* at 30–31. Mr. Wallace's analysis of Defendant's materials using the CC Rating System led him to disagree with Ms. Wier and conclude that Defendant failed to maintain a CMS to adequately avoid HMDA reporting errors. *Id.* at 13–31.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 contains the four requirements for expert testimony:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony can be properly based on "professional study or personal experience." *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999)). While "merely telling the jury what result to reach is unhelpful and inappropriate," expert testimony is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014); Fed. R. Evid. 704(a). "[A]dmissibility of an expert's conclusion depends on the nature of the issue and the circumstances of the case, and involves a

4

large element of judicial discretion." *United States v. Milton*, 555 F.2d 1198, 1203–04 (5th Cir. 1977).

## ARGUMENT

Defendant moves to exclude "legal opinion testimony" of Mr. Wallace—here, testimony that Defendant violated HMDA and Regulation C. The sole basis for Defendant's motion is the assertion that "[d]ue to the proliferation of legal conclusions in Wallace's expert report and deposition testimony, Mr. Wallace is likely to testify to similar legal opinions at trial." Dkt. 93 at 4. But that statement mischaracterizes Mr. Wallace's planned testimony. In compliance with Rule 702, Mr. Wallace's expert testimony will use his decades of specialized knowledge to apply the uniformly-accepted CC Rating System used by examiners to assess Defendant's policies, procedures, and practices related to HMDA compliance. *See* Fed. R. Evid. 702.[2] Based on that assessment, Mr. Wallace will offer his opinion (rebutting that of Ms. Wier's) that Defendant had many deficiencies in its CMS, rendering it not designed to avoid the reporting errors admitted to by Defendant.

Defendant also states in its motion that its "position that the purported errors in its HMDA submission do not constitute a 'violation' of HMDA and Regulation C is a core component of its defense," citing its Motion to Dismiss. Dkt. 93 at 3. Defendant did not argue in its Motion to Dismiss that its procedures were reasonably designed to avoid errors; it instead argued that the meaning of HMDA's accuracy requirement could not be determined by the

---

[2] Defendant's concerns regarding Mr. Wallace's report are also misplaced because, absent special circumstances or agreement of the parties, expert reports are not offered as evidence at trial. *See Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, 2022 WL 16921821, at *3 n. 1 (S.D. Fla. Nov. 14, 2022) ("This Court does not normally, absent special circumstances, or agreement of the parties, allow an expert's report to be submitted to the jury as they often contain inadmissible, irrelevant, or unfairly prejudicial statements or information.").

statute or Regulation C. That argument—which the Court squarely rejected, *see* Dkt. 62 at 6—is not part of Mr. Wallace's planned testimony.

Mr. Wallace will also not be "merely telling the jury what result to reach," *see* Dkt. 93 at 2, but will instead explain how he identified widespread deficiencies in Defendant's CMS using the CC Rating System and that these deficiencies caused Defendant not to maintain procedures reasonably adapted to prevent the reporting errors in its 2020 HMDA data. *See Umana-Fowler*, 49 F. Supp. 3d at 1122. Mr. Wallace should be permitted to do so given "the nature of the issue and the circumstances of the case." *Milton*, 555 F.2d at 1203–04. The jury can then decide whether the errors Defendant admits to in its 2020 HMDA data are bona fide or not. Moreover, Defendant will have the opportunity to cross-examine Mr. Wallace regarding the basis of each of his opinions. *Maiz*, 253 F.3d at 667 (finding no error in trial court permitting expert to testify regarding the meaning of parties' contracts, in part because defendants "had ample opportunity to cross-examine" expert). In addition, should the Court deem it necessary after Mr. Wallace has testified, the Court can issue a cautionary jury instruction. *See id.* (Approving of instructions to prevent a jury from placing too much weight on expert testimony).

## CONCLUSION

For the reasons stated, Defendant's motion to exclude certain opinion testimony by Michael Wallace should be denied.

Dated: May 31, 2024                                                      Respectfully Submitted,

/s/ Emily Holness
Emily Holness
Special Florida Bar ID A5503128
New York Bar No. 4947941

Charles Eric Mothander
Special Florida Bar ID A5503180
DC Bar No. 1032539

Hallie Ryan
Special Florida Bar ID A5503127
Virginia Bar No. 85927

Joseph Lake
Special Florida Bar ID A5503154
California Bar No. 246679

Samuel Weinstock
Special Florida Bar ID A5503195
Maryland Bar No. 2211290261

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW Washington, DC 20552

Email: emily.holness@cfpb.gov
Email: charles.mothander@cfpb.gov
Email: hallie.ryan@cfpb.gov
Email: joseph.lake@cfpb.gov
Email: samuel.weinstock@cfpb.gov

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 31, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will provide automatic notice to the below listed counsel of record.

      Herman J. Russomanno III
      RUSSOMANNO & BORRELLO, P.A.
      Museum Tower – Penthouse 2800
      150 West Flagler Street
      Miami, Florida 33130
      Telephone: (305) 373-2101
      Facsimile: (305) 373-2103
      Herman2@russomanno.com

      Mitchel H. Kider
      Timothy P. Ofak
      Charles Cooper
      Joseph M. Katz
      WEINER BRODSKY KIDER PC
      1300 19th Street NW, Fifth Floor
      Washington, DC 20036
      Tel: (202) 628-2000
      Fax: (202) 628-2011
      kider@thewbkfirm.com
      ofak@thewbkfirm.com
      cooper@thewbkfirm.com
      katz@thewbkfirm.com

<u>/s/ Emily Holness</u>
Emily Holness
Special Florida Bar ID A5503128
New York Bar No. 4947941
