**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:23-cv-81373- MIDDLEBROOKS-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU
     Plaintiff,

vs.

FREEDOM MORTGAGE CORPORATION,
     Defendant.

_____/

**PLAINTIFF'S OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

The Consumer Financial Protection Bureau (Bureau) brought this action to hold Defendant Freedom Mortgage Corporation (Freedom) accountable for reporting inaccurate mortgage lending data in violation of the Home Mortgage Disclosure Act (HMDA) and HMDA's implementing Regulation C. Freedom is a repeat offender when it comes to HMDA and Regulation C—Freedom consented to entry of a 2019 Consent Order (2019 Order) with the Bureau in which the Bureau found that Freedom violated HMDA and Regulation C, 12 U.S.C. § 2803; 12 C.F.R. §§ 1003.4 and 1003.5, and prohibited Freedom from further violation of these specific provisions of law. Because of its violations of HMDA and Regulation C in connection with its 2020 HMDA submission, Freedom violated the 2019 Order. Freedom now seeks summary judgment on all three counts of the Bureau's Complaint based on (i) an erroneous interpretation of the Bureau's authority to bring actions to enforce HMDA in federal court; and (ii) the unconvincing assertion that Freedom lacked sufficient notice of its obligations under HMDA and Regulation C's specific provisions detailing the information Freedom was required to collect, record, and report. Freedom cannot dispute its liability on the Bureau's three counts and the Court should deny Freedom's motion for summary judgment in full.

## ARGUMENT

### I.      The Bureau can enforce HMDA in court.

#### A.  HMDA and the CFPA's text confirm that the Bureau can enforce HMDA in court.

In its motion, Freedom argues that a provision in the CFPA regarding the statutes of limitations for the Bureau to bring an action somehow strips the Bureau of its statutory authority to enforce enumerated consumer laws, such as HMDA, in federal court. This unfounded argument lacks any merit. The Bureau is clearly authorized to enforce HMDA in federal court. And despite Freedom's arguments to the contrary, both HMDA and the Consumer Financial Protection Act of 2010 (CFPA) confirm that straightforward fact.

To start, Congress expressly stated in HMDA that "compliance with [HMDA] shall be enforced . . . under Subtitle E of the [CFPA], by the Bureau, with respect to any person subject to [HMDA]."[1] Subtitle E of the CFPA in turn details the "Enforcement Powers" of the Bureau.[2]

---

[1] 12 U.S.C. § 2804(b)(1)(B).
[2] *See* Pub. L. No. 111-203, Title X, Subtitle E, 124 Stat. 1376, 2018 (2010).

Subtitle E provides two paths for the Bureau to enforce the laws it is charged with administering. Under section 5563, it can "conduct hearings and adjudication proceedings"—that is, administrative adjudications.[3] And under section 5564, it can "commence a civil action"— that is, an action in court.[4]

Section 5564's authorization for the Bureau to bring "civil action[s]" make clear that the Bureau can bring an action in federal court to enforce HMDA. That provision states that the Bureau may "commence a civil action against" "any person [that] violates a Federal consumer financial law."[5] And "Federal consumer financial law" includes HMDA.[6] Put together, this means that the Bureau can enforce HMDA using its authorities under the CFPA, and the CFPA authorizes the Bureau to bring civil actions to enforce compliance with federal consumer financial laws, including HMDA. Thus, the Bureau can bring this civil action asserting violations of HMDA.

### B. Freedom's arguments that the Bureau cannot bring a standalone HMDA enforcement action in federal court are meritless.

Despite HMDA's express grant of enforcement authority to the Bureau, Freedom argues that the Bureau cannot bring this suit in federal court, because, in Freedom's telling, section 5564(g)(2) precludes it.[7] This argument relies on a fundamental misreading of the CFPA. Freedom's argument is premised on 12 U.S.C. § 5564(g)(2), a statute of limitations provision which provides (A) that "action[s] arising under this title do[] not include claims arising solely under enumerated consumer laws" and (B) that in "any action arising solely under an enumerated consumer law, the Bureau may commence, defend, or intervene in the action in accordance with

---

[3] 12 U.S.C. § 5563(a).

[4] 12 U.S.C. § 5564(a).

[5] *Id.*

[6] *See* 12 U.S.C. § 5481(14) (defining "Federal consumer financial law" to include "enumerated consumer laws"); 12 U.S.C. § 5481(12)(k) (listing HMDA as an enumerated consumer law). Subtitle E provides further detail about where and when those actions can be brought. Section 5564(f) provides that "[a]ny civil action brought under [the CFPA] may be brought in a United States district court or in any court of competent jurisdiction of a state in a district in which the defendant is located or resides or is doing business," 12 U.S.C. § 5564(f). And section 5564(g) provides a time limit, providing generally that "no action may be brought under [the CFPA] more than 3 years after the date of discovery of the violation to which the action relates." *Id.* § 5564(g)(1).

[7] Dkt. 90 at 3–5.

the requirements of that provision of law."[8] From this, Freedom claims that the Bureau can bring an enforcement action in federal court "only if the enumerated consumer law itself allows such a lawsuit."[9] And, according to Freedom, HMDA does not itself allow the Bureau to bring suit. This is wrong on both fronts: Section 5564(g)(2) does not strip the Bureau of authority to bring suits to enforce enumerated consumer laws, and HMDA allows the Bureau to bring suit in federal court.

First, Freedom fundamentally misunderstands section 5564(g)(2)'s meaning. That section is about statutes of limitations and not whether the Bureau can bring an action in district court. We know this because section 5564(g) is titled "Time for bringing action"[10] and begins by setting out, in section 5564(g)(1), the general rule that "no action may be brought under [the CFPA] more than 3 years after the date of discovery of the violation to which an action relates."[11] Section 5564(g)(2), on which Freedom relies, then provides a caveat to that general rule: "[a]n action arising under [the CFPA] does not include claims arising solely under enumerated consumer laws."[12] Instead, if an action "aris[es] solely under an enumerated consumer law," then the Bureau "may commence . . . the action in accordance with the requirements of that provision of law."[13] In other words, for an action "arising solely under an enumerated consumer law," the statute of limitations in section 5564(g)(1) does not apply, and the Bureau need only follow any statute of limitations in the enumerated consumer law itself.

Section 5564(g)(2)(A)'s statement that "[a]n action arising under [the CFPA] does not include claims arising solely under enumerated consumer laws" has no relevance to the Bureau's authority to bring a civil action for claims arising solely under enumerated consumer laws (such as the claim in count one to enforce HMDA here).[14] Section 5564 does not limit its authorization

---

[8] 12 U.S.C. § 5564(g)(2).

[9] Dkt. 90 at 4.

[10] 12 U.S.C. § 5564(g); *see also Rudisill v. McDonough*, 601 U.S. 294, 309 (2024) ("Section headings supply clues as to what Congress intended." (internal citations and quotation marks omitted)).

[11] 12 U.S.C. § 5564(g)(1).

[12] 12 U.S.C. § 5564(g)(2)(A).

[13] 12 U.S.C. § 5564(g)(2)(B).

[14] Section 5564(g)(2) has even less relevance to the Bureau's authority to bring claims that do not arise solely under enumerated consumer laws—such as the two violations of the CFPA that the Bureau asserts here (in counts two and three). Freedom cannot credibly contend that the claims asserting that Freedom violated the CFPA "arise solely under" HMDA. Even though those CFPA

for the Bureau to bring civil actions to actions "arising under the CFPA." Instead, it more broadly provides that "[i]f any person violates a Federal consumer financial law, the Bureau may . . . commence a civil action against such person."[15] By its terms, nothing in section 5564(g)(2) limits that authorization. Thus, reading section 5564(g)(2), not in "isolation" but rather in the "specific context in which [it] is used, and the broader context of the statute as a whole" reveals that section 5564(g)(2) does not bar the Bureau's action here.[16]

Moreover, Freedom is wrong to claim that HMDA itself does not provide for the Bureau to bring a HMDA enforcement action in federal court. As discussed above, HMDA expressly states that the "requirements of [HMDA] shall be enforced . . . under subtitle E of the [CFPA], by the Bureau."[17] The CFPA in turn authorizes the Bureau to bring suit to enforce HMDA. Freedom, however, appears to claim that it is not enough for HMDA to authorize enforcement by "referenc[ing] . . . the enforcement provisions in the CFPA."[18] Freedom does not cite any support for that proposition—or even offer any argument in support.

And if Freedom were right, that would leave the Bureau with little authority to enforce any enumerated law. Congress used the same formula in HMDA that it did in most of the enumerated consumer laws under the Bureau's jurisdiction—stating that "compliance" with the law "shall be enforced under Subtitle E" of the CFPA "by the Bureau."[19] When Congress created

---

claims may be predicated in part on Freedom's violations of HMDA, they undeniably arise under the CFPA as well. This doesn't effectively allow the Bureau to "seiz[e] . . . enforcement authority that Congress expressly withheld," *contra* Dkt. 90 at 5, both because (1) Congress did not withhold the authority to enforce HMDA, and (2) in fact, Congress expressly granted the Bureau this enforcement authority by making a violation of an enumerated law or Bureau order by a covered person, like Freedom, a violation of the CFPA. *See* 12 U.S.C. § 5536(a)(1)(A) (stating that it "shall be unlawful for [a] covered person" to "commit any act or omission in violation of a Federal consumer financial law"); *id*. at § 5481 (defining "Federal consumer financial law" to include "the enumerated consumer laws" and "any . . . order prescribed by the Bureau under this title").

[15] 12 U.S.C. § 5564(g)(2).

[16] *Pollitzer v. Gebhardt*, 860 F.3d 1334, 1339 (11th Cir. 2017).

[17] 12 U.S.C. § 2804(b)(1)(B).

[18] Dkt. 90 at 4 n.3.

[19] *See, e.g.*, 15 U.S.C. § 1691c(a)(1)(9) (Equal Credit Opportunity Act); 15 U.S.C. § 1681s(b)(1)(H) (Fair Credit Reporting Act); 15 U.S.C. § 1692l(b)(6) (Fair Debt Collection Practices Act); 15 U.S.C. § 1693o(a)(5) (Electronic Fund Transfer Act); 15 U.S.C. § 1607(a)(1)(6) (Truth in Lending Act, Consumer Leasing Act, Fair Credit Billing Act, and Home Ownership and Equity Protection Act); 12 U.S.C. § 4309(a)(3) (Truth in Savings Act); 12 U.S.C.

the Bureau, it amended these enumerated consumer laws—including HMDA—to specifically state that the Bureau is now authorized to enforce them. That another statute—the CFPA—provides the details about the Bureau's enforcement authority does not change the fact that each of these statutes themselves, including HMDA, authorizes the Bureau's enforcement of them using all the tools of Subtitle E.

For these reasons, Section 5564(g)(2)(B) does not provide a basis to disregard Congress's clear authorization to the Bureau to file HMDA enforcement actions—including standalone HMDA enforcement actions—in federal court.

## II.      The 2019 Consent Order Is Enforceable.

The Court should further deny summary judgment for Freedom on Count II. That Count seeks to hold the company accountable for its violation of Paragraph 29 of the 2019 Order it entered with the Bureau, which, among other requirements, directed Freedom to obey Section 304(a), (b), or (h) of the Home Mortgage Disclosure Act,[20] and Sections 1003.4(a)-(b) or 1003.5(a) of Regulation C[21]—the same provisions of those laws on which Freedom's earlier violations were based.[22] In attempting to renege on this negotiated agreement, Freedom repeats its argument from its Motion to Dismiss, which mischaracterizes both binding precedent and the 2019 Order at issue in this case. Freedom's argument should again be rejected.[23]

### A.  Freedom expressly waived its right to challenge the 2019 Order.

As an initial matter, Freedom explicitly agreed not to challenge the validity of the 2019 Order, and that agreement should be enforced. Specifically, it stipulated that the 2019 Order would be "fully enforceable" by the Bureau and waived its right to "seek any . . . judicial review of the Consent Order."[24] Freedom now seeks to go back on that agreement with the baseless

---

§ 4909(a)(4) (Homeowners Protection Act); 15 U.S.C. § 6105(d) (Telemarketing Sales Rule); 12 U.S.C. § 1831t(f)(1) (subsections (b) through (f) of section 43 of the Federal Deposit Insurance Act).

[20] 12 U.S.C. § 2803(a), (b), and (h).

[21] 12 C.F.R. §§ 1003.4(a)-(b), 1003.5(a); Dkt. 87-2, Consent Order, *In re: Freedom Mortgage Corp.* (June 5, 2019) (2019 Order) ¶ 29.

[22] Dkt. 87-2, 2019 Order ¶ 28 (finding violations of HMDA, 12 U.S.C. § 2803, and Regulation C, §§ 1003.4, 1003.5, in connection with submitting erroneous HMDA data for calendar years, 2014, 2015, 2016, and 2017).

[23] Dkt. 62 at 9–10.

[24] Dkt. 87-3, Stipulation, *In re Freedom Mortgage Corp.*, No. 2019-BCFP-0007 (June 5, 2019) ¶¶ 3, 9(d).

argument that parties cannot waive their right to judicial review of Orders with "obey-the-law" provisions.[25] That argument relies entirely on a footnote from *S.E.C. v. Smyth*,[26] which this Court previously noted is dicta,[27] and does not actually support Freedom's argument. In *Smyth*, the Eleventh Circuit acknowledged the defendant "could not challenge" his consent decree because he "waived any right he might have to appeal" it—much like Freedom did.[28] It then noted in dicta that the particular "obey-the-law" provisions in that order would be unenforceable, but it said so only because the district court had entered the "obey the law" provisions and thus had the "inherent power to modify or revoke them."[29] That is not the case here: the 2019 Order is a final, administrative order entered by the Bureau, whose terms were not subject to a district court's review.[30] Freedom's voluntary agreement should thus be enforced.

## B. The 2019 Order prescribes specific conduct that Freedom purports to understand.

Even if Freedom had not made that agreement, an "obey-the-law" prescription focused on key provisions of the relevant law—recognizing Freedom's past HMDA and Regulation C violations from 2014 through 2017—was entirely appropriate to include in the 2019 Order. In the Eleventh Circuit, "an injunction that orders a defendant to comply with a statute" is enforceable "where the statutory terms are specific and the defendant clearly knows what is prohibited or required."[31] The requirement for specificity arises from the need "to prevent uncertainty and confusion of those faced with injunctive orders."[32] Freedom relies heavily on two Eleventh Circuit securities law decisions—*S.E.C. v. Goble* and *S.E.C. v. Smyth*[33]—neither of which

---

[25] Dkt. 90 at 10.

[26] 420 F.3d 1225, 1233 n.14 (11th Cir. 2005).

[27] *S.E.C. v. Solow*, 554 F. Supp. 2d 1356, 1361 (S.D. Fla. 2008).

[28] *Smyth*, 420 F.3d at 1233 n.14.

[29] *Id.*

[30] *See* 12 U.S.C. § 5563(d)(2).

[31] *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1362 (11th Cir. 2019); *see also S.E.C. v. Keener*, 644 F. Supp. 3d 1290, 1302 (S.D. Fla. 2022) ("[I]n some instances, injunctions enjoining specific violations of the Exchange Act are permissible, so long as they 'clearly and specifically describe permissible and impermissible conduct.'" (quoting *S.E.C. v. Goble*, 682 F.3d 934, 952 (11th Cir. 2012)); *and FTC v. Nat'l Urological Grp.*, 786 Fed. App'x 947, 956 n.3 (11th Cir. 2019) ("[A]side from concerns about clarity, there is nothing inherently wrong with an injunction that instructs a party to comply with a specific law").

[32] *Goble*, 682 F.3d at 950 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

[33] Dkt. 90 at 8–10 (citing *Goble*, 682 F.3d at 952; *S.E.C. v. Smyth*, 420 F.3d at 1233 n.14).

suggested all "obey-the-law" orders are unenforceable.[34] To the contrary, the court "recognize[d] that at times an injunction that orders a defendant to comply with a statute may be appropriate."[35] In both *Goble* and *Smyth*, the Eleventh Circuit declined to enforce "sweeping" injunctions requiring compliance with broad and vague provisions of the Securities Exchange Act, because the enjoined party "would need to review hundreds of pages of the Federal Reporters, law reviews, and treatises," and decode an "ever-changing judicial landscape" to understand them.[36] In contrast, the court explained, it would enforce an order like the one that Supreme Court upheld in *McComb v. Jacksonville Paper Co.*,[37] which "directed the defendants to obey the minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act."[38] The Court explained that "obey-the-law" orders "are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown."[39] More recently, the Eleventh Circuit allowed an "obey-the-law" order specifying, "where it *does* direct action consistent with the law, it does so for specific provisions that the [defendants] claim they already understand."[40]

While some "obey-the-law" injunctions fail to "describe in detail the permissible and impermissible conduct to which defendants are subject,"[41] Paragraph 29 fits comfortably among the sort of orders that the Supreme Court and Eleventh Circuit have repeatedly ruled are enforceable. The 2019 Order avoids any concerns about "uncertainty and confusion" by referencing extremely specific requirements of HMDA and Regulation C.[42] Those provisions set forth in painstaking particularity the information that covered lenders are required to report. HMDA and Regulation C require the reporting of 48 distinct data points, which Regulation C itself describes in meticulous, technical detail.[43] As this Court recognized in its order denying Freedom's motion to dismiss, the relevant portions of Regulation C "establish[] clear and

---

[34] *See Solow*, 554 F. Supp. 2d at 1361–62 (Middlebrooks, J.) (gathering cases upholding "obey-the-law" injunctions).
[35] *Goble*, 682 F.3d at 950.
[36] *Id.* at 951; *see also Smyth*, 420 F.3d at 1233 n.14.
[37] 336 U.S. 187 (1949).
[38] *Goble*, 682 F.3d at 950–51 (citing *McComb*, 336 U.S. at 191–95).
[39] *McComb*, 336 U.S. at 192.
[40] *Askins & Miller Orthopaedics, P.A.*, 924 F.3d at 1361–62 (emphasis in original).
[41] Dkt. 62 at 9.
[42] Dkt. 87-2, 2019 Order ¶ 29.
[43] 12 C.F.R. § 1003.4(a).

unambiguous requirements."[44] There are no treatises or law review articles for Freedom to review, and there is no "ever-changing judicial landscape."[45] In terms of specificity, Regulation C and the Securities Exchange Act provisions at issue in *Gobel* and *Smyth* are not similar.[46] The 2019 Order at issue here is much more like (in fact, is even more specific than) the one in *McComb* than those in *Goble* and *Smyth*.

Freedom has not claimed—and could not reasonably claim—that it does not know that HMDA and Regulation C require lenders to report accurate data or what kind of data to report. In fact, Freedom has consistently portrayed itself as understanding what the 2019 Order requires. It says it made specific "improvements and enhancements" based on the 2019 Order.[47] Freedom's 30(b)(6) representative testified that improving the company's policies and procedures was its "top priority" "[a]s soon as we entered into the consent order," starting with "the key changes directed by the consent order."[48] And Freedom has emphasized numerous, specific policy changes it says it made to comply with the 2019 Order.[49] Far from experiencing "uncertainty and confusion," Freedom itself has claimed before and during this litigation that it was on notice as to what the 2019 Order required it to do. There is no question that the "[laws] with which Defendant[] must comply are specific, and . . . they are well aware of the conduct the proposed injunction addresses."[50] Thus, Paragraph 29 of the 2019 Order is enforceable and Freedom has failed to show it is entitled to summary judgement dismissing Count II.

## CONCLUSION

For the reasons stated, Freedom's Motion for Summary Judgment should be denied in full.

---

[44] Dkt. 62 at 8.

[45] *Goble*, 682 F.3d at 951.

[46] *Compare* 12 C.F.R. § 1003.4(a)(16) ("The principal reason or reasons the financial institution denied the application, if applicable."), *with* 15 U.S.C. § 77q(a) (prohibiting, *inter alia*, the "employ[ment of] any device, scheme, or artifice to defraud.").

[47] Dkt. 87-11, Letter from Defendant to Bureau (Sept. 14, 2021) at 5.

[48] Dkt. 87-7, Deposition of Defendant 30(b)(6) Cynthia Berman (Apr. 16, 2024) at 43:1–11.

[49] Dkt. 87-1, Defendant's First CID Response (Mar. 11, 2022) at 10–13.

[50] *Askins & Miller Orthopaedics, P.A.*, 924 F.3d at 1362.

Dated: May 31, 2024                                     Respectfully submitted,

<u>/s/ Emily Holness</u>
Emily Holness
Special Florida Bar ID A5503128
New York Bar No. 4947941

Charles Mothander
Special Florida Bar ID A5503180
DC Bar No. 1032539

Hallie Ryan
Special Florida Bar ID A5503127
Virginia Bar No. 85927

Joseph Lake
Special Florida Bar ID A5503154
California Bar No. 246679

Samuel Weinstock
Special Florida Bar ID A5503195
Maryland Bar No. 2211290261

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW Washington, DC 20552

Email: emily.holness@cfpb.gov
Email: charles.mothander@cfpb.gov
Email: hallie.ryan@cfpb.gov
Email: joseph.lake@cfpb.gov
Email: samuel.weinstock@cfpb.gov

*Attorneys for Plaintiff*

9

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will provide automatic notice to the below listed counsel of record.

Herman J. Russomanno III
RUSSOMANNO & BORRELLO, P.A.
Museum Tower – Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103
Herman2@russomanno.com

Mitchel H. Kider
Timothy P. Ofak
Charles Cooper
Joseph M. Katz
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel: (202) 628-2000
Fax: (202) 628-2011
kider@thewbkfirm.com
ofak@thewbkfirm.com
cooper@thewbkfirm.com
katz@thewbkfirm.com

/s/ Emily Holness
Emily Holness
Special Florida Bar ID A5503128
New York Bar No. 4947941

10