## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

Case No. 9:23-cv-81373- MIDDLEBROOKS-MATTHEWMAN

CONSUMER FINANCIAL PROTECTION BUREAU,
Plaintiff,

vs.

FREEDOM MORTGAGE CORPORATION,
Defendant.

_____/

## STIPULATED FINAL JUDGMENT

THIS CAUSE comes before the Court pursuant to the Parties' Joint Motion to Approve Consent Judgment, filed June 18, 2024. (DE 116). The Consumer Financial Protection Bureau ("Bureau") commenced this civil action on October 10, 2023, to obtain injunctive relief and civil penalties from Freedom Mortgage Corporation ("Defendant"). The Complaint alleges violations of the Home Mortgage Disclosure Act ("HMDA"), 12 U.S.C. §§ 2802(3), 2802(5), 2803; Regulation C, 12 C.F.R. §§ 1003.2, 1003.4(a), 1003.4(b), 1003.5; and the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5536(a)(1)(A), in connection with Defendant's submission of 2020 HMDA Data to the Bureau.

The Bureau and Defendant agree to entry of this Stipulated Final Judgment, without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint. By agreement of the parties, the Bureau will concurrently terminate the Consent Order entered into by the parties on June 5, 2019.

## FINDINGS

1.      This Court has jurisdiction over the parties and the subject matter of this action.

2.      Defendant neither admits nor denies the allegations in the Complaint, except as specified in this Order. For purposes of this Order, Defendant admits the facts necessary to establish the Court's jurisdiction over it and the subject matter of this action.

3.      Defendant waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4.      Entry of this Order is in the public interest.

## DEFINITIONS

5.      The following definitions apply to this Order:

    a.    **"2019 Consent Order"** means the Consent Order entered into between the Bureau and Defendant in In the Matter of Freedom Mortgage Corp., 2019-BCFP-0007 (June 5, 2019).

    b.    **"Board"** means Defendant's Board of Directors as of the Effective Date of this Order, of which Defendant's President is the sole member, and includes all future members of Defendant's corporate governing body.

    c.    **"Covered Loans"** are applications for, originations of, and purchases of home purchase loans, home improvement loans, and refinancings that Defendant is required to report on a HMDA Loan/Application Register for each calendar year under HMDA and Regulation C.

    d.    **"Defendant"** means Freedom Mortgage Corporation, and its successors and assigns.

    e.    **"Effective Date"** means the date on which the Order is entered by the Court.

2

f.   **"Filing Date"** means October 10, 2023.

g.   **"HMDA Data"** are mortgage-loan data submitted in accordance with HMDA, 12 U.S.C. § 2803, and Regulation C, 12 C.F.R. § 1003.5.

h.   **"HMDA Loan/Application Register"** or **"HMDA LAR"** means the compilation of information about each applicant or borrower, reported on a loan-by-loan, application-by-application basis in accordance with HMDA and Regulation C.

i.   **"Lawsuit Subject Matter"** means allegations that, between June 5, 2019 and the Effective Date, Defendant violated (1) HMDA, 12 U.S.C. § 2803, and Regulation C, 12 C.F.R. § 1003.5; (2) the CFPA by violating paragraph 29 of the 2019 Order; and (3) the CFPA by violating HMDA and Regulation C.

j.   **"Related Consumer Action"** means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant based on substantially the same facts as described in the Complaint.

k.   **"Supervision Director"** means the Assistant Director of the Office of Supervision Policy for the Consumer Financial Protection Bureau, or their delegate.

## CONDUCT PROVISIONS

### I
### PROHIBITIONS

**IT IS ORDERED** that:

6.      Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, may not violate HMDA, 12 U.S.C. §§ 2801-2810, or Regulation C, 12 C.F.R. part 1003, and is prohibited from:

    a. Failing to properly collect and record each required data item for each covered loan or application, as required by 12 C.F.R. § 1003.4, and to submit such data as required under 12 C.F.R. § 1003.5, unless the failure to properly collect, record, and submit the required data item was "unintentional and occurred despite the maintenance of procedures reasonably adapted to avoid such an error." 12 C.F.R. § 1003.6(b).

**II**
**AFFIRMATIVE REQUIREMENTS**

**IT IS FURTHER ORDERED** that:

7. Defendant must take the following affirmative actions to ensure compliance with Section 304(a), (b), and (h) of HMDA, 12 U.S.C. § 2803(a), (b), and (h), and Sections 1003.4(a)-(b) and 1003.5(a) of Regulation C, 12 C.F.R. §§ 1003.4(a)-(b), 1003.5(a), in accordance with Regulation C, 12. C.F.R. § 1003.6(b):

    a. Develop, implement, and maintain policies, procedures and controls reasonably adapted to prevent and detect errors in Defendant's HMDA Data;

    b. Record and maintain consumer and loan data in a manner designed to ensure the accuracy and completeness of required submissions to the Bureau under HMDA and Regulation C;

    c. On a quarterly basis, submit compliant HMDA Data to the Bureau in accordance with Regulation C, subject to the annual correction of such data permitted by Regulation C;

    d. Develop, implement, and maintain operating policies and training procedures, to be provided (i) to Defendant's employees who collect, record, or submit HMDA Data or supervise, directly or indirectly, those who do, within 60 days of the Effective

4

Date, (ii) promptly following when employees performing similar functions join Defendant or become assigned to such roles, and (iii) for all such employees repeated annually, to ensure that such personnel have a current and complete understanding of HMDA standards and reporting requirements and how to collect, record, and report HMDA data accurately.

**HMDA Compliance Subcommittee**

8. Defendant must establish a HMDA Compliance Subcommittee, which must, at a minimum, include Defendant's Chief Executive Officer, Chief Operating Officer, Chief Corporate Risk Officer, and Chief Legal Officer. Defendant must keep a HMDA Compliance Subcommittee in place in accordance with this paragraph of the order for 5 years following the Effective Date.

9. Within 14 days of the Effective Date, Defendant must provide in writing to the Bureau the name of each member of the HMDA Compliance Subcommittee. If there is a change of membership to the HMDA Compliance Subcommittee, Defendant must submit the name of any new member in writing to the Bureau at least 30 days before the change or as soon as practicable after the change, but in any case, no longer than 14 days after the change.

10. The HMDA Compliance Subcommittee must meet at least every quarter and must maintain minutes of its meetings. Each quarter, the HMDA Compliance Subcommittee shall report to the Board the status and outcome of corrective actions arising out of HMDA transaction test reporting described below in Paragraphs 13-23 and make any recommendations to the Board regarding resources or other measures necessary to ensure compliance with this Order.

**Independent HMDA Auditor**

11. Defendant shall retain a qualified third-party independent auditor ("HMDA Auditor") to perform the HMDA data transaction testing, root cause analysis and written reports required by

5

Paragraphs 13-21, 24-27, and 31 below. Within 30 days of the Effective Date, Defendant must provide in writing to the Supervision Director the name of the selected HMDA Auditor and a summary of their qualifications for review and non-objection. Defendant may seek to replace the HMDA Auditor by submitting to the Supervision Director a summary of the replacement HMDA Auditor's qualifications for review and non-objection. Defendant must keep a HMDA Auditor in place in accordance with this paragraph of the Order for 5 years following the Effective Date.

12.     The Supervision Director will have the discretion to make a determination of non-objection to the HMDA Auditor identified by Defendant. If the Supervision Director directs Defendant to submit the name of a different qualified, third-party auditor, Defendant must do so within 30 days of Defendant's receipt of such direction from the Supervision Director.

**Quarterly HMDA Transaction Testing**

13.     Beginning the first full quarter following the Effective Date and for the next 5 years, Defendant must conduct quarterly HMDA transaction testing.

14.     The purpose of each HMDA transaction test shall be to validate the HMDA data reported pursuant to HMDA annual reporting, 12 C.F.R. § 1003.5(a)(1)(i), or HMDA quarterly reporting, 12 C.F.R. § 1003.5(a)(1)(ii).

**HMDA Transaction Testing Requirements**

15.     To validate Defendant's HMDA data, the HMDA Auditor shall select a random sample of at least 159 entries from Defendant's HMDA LAR (Sample LAR) from the previous quarterly or annual submission, whichever is most recent, along with the corresponding loan or application files ("Sample Loan Files").

16.     The HMDA Auditor shall verify the accuracy of the data in the entries in the Sample LAR against the corresponding Sample Loan Files. The HMDA Auditor shall document in their work

papers any differences between the data in the HMDA LAR and information in the Sample Loan Files. All data fields within the Sample LAR must be reviewed.

**Root Cause Analysis**

17.     The HMDA Auditor, in coordination with Defendant, shall determine the root cause of each error identified by the quarterly or annual transaction testing, as applicable.

18.     Once each root cause is determined in accordance with Paragraph 17, Defendant shall correct all errors that resulted from that root cause, in addition to correcting the specific errors in the Sample Loan Files.

19.     Defendant shall take action to prevent the error from recurring in the future and shall report those actions in detail to the HMDA Auditor. To the extent errors recur, Defendant shall take additional action to prevent future errors and report those actions in detail to the HMDA Auditor.

**Written Reports**

20.     By the end of each quarter following the quarter tested, the HMDA Auditor shall prepare a Transaction Test Report describing the transaction testing methodology used and summarizing the HMDA transaction test and the results of such test, including any and all errors identified, all error rates per data field, the root cause of all errors, and all actions taken by Defendant to prevent the error from recurring in the future. To the extent errors recur, the report shall describe the additional actions taken by Defendant to correct the root cause of the problem.

21.     The HMDA Auditor shall submit the Transaction Test Report to the HMDA Compliance Subcommittee and the Board, no later than 60 days following the end of each quarter following the quarter tested.

22.     Six months after the Effective Date and annually thereafter for 5 years, Defendant shall provide the HMDA Auditor's written report to the Supervision Director describing its review,

findings, any errors, and root causes for any errors, and including copies of all Transaction Test Reports by the HMDA Auditor. The report shall also describe all steps Defendant undertook to ensure that Defendant's processes and procedures were reasonably designed to prevent and detect errors in its annual HMDA LARs.

**Correction and Submission of Defendant's HMDA Data**

23.     Defendant must submit its HMDA Data to the Bureau, correcting all errors, including omissions, identified by Defendant or the HMDA Auditor each year by the annual HMDA filing deadline.

**Evaluation and Correction of Defendant's 2021, 2022, and 2023 HMDA Data**

24.     Defendant must conduct HMDA transaction testing for each of the annual HMDA LARs submitted for the calendar years 2021, 2022, and 2023.

25.     To validate Defendant's HMDA data, the HMDA Auditor shall select a random sample of 159 entries from each of Defendant's HMDA LAR for 2021, 2022, and 2023 along with the corresponding loan or application files ("Sample Loan Files").

26.     The HMDA Auditor shall verify the accuracy of the data in the entries in the LAR from 2021, 2022, and 2023 against the corresponding Sample Loan Files. The HMDA Auditor shall document in their work papers any differences between the data in the HMDA LAR and information in the Sample Loan Files. All data fields within the Sample LAR must be reviewed.

27.     The HMDA Auditor, in coordination with Defendant, shall determine the root cause of each error identified by the transaction testing for the calendar years 2021, 2022, and 2023.

28.     Once each root cause is determined, Defendant shall correct all errors that resulted from the root cause, in addition to the specific errors in the Sample Loan Files.

29.     Defendant shall take action to prevent the error from recurring in the future and shall report those actions in detail to the HMDA Auditor.

30.     If errors are identified, they must be corrected, and the data must be resubmitted to the Bureau, by September 10, 2025.

31.     Within 30 days of any resubmission, the HMDA Auditor shall prepare a report describing the transaction testing methodology used, summarizing the HMDA transaction test and the results of such test, including any and all errors identified, all error rates per data field, the root cause of all errors, and all actions taken by Defendant to prevent the error from recurring in the future.

32.     By December 10, 2025, Defendant must provide a report to the Supervision Director describing its review, findings, any errors, and root causes for any errors, and including copies of all reports by the HMDA Auditor. The report shall also describe all steps Defendant undertook in response to the findings of the HMDA Auditor pursuant to Paragraphs 24-32 to ensure that Defendant's processes and procedures were reasonably designed to prevent and detect errors in its annual HMDA LARs.

### III
### COMPLIANCE PLAN

33.     Within 30 days of the Effective Date, Defendant must create and implement a comprehensive compliance plan designed to ensure that Defendant's HMDA reporting complies with all applicable laws that the Bureau enforces, including Federal consumer financial laws, and the terms of this Order ("Compliance Plan"). The HMDA Compliance Subcommittee must review and unanimously approve the Compliance Plan. The Compliance Plan must include, at a minimum:

    a.   Detailed steps for addressing each prohibition and action required by this Order;

    b.   Enhanced policies, procedures, employee training, and controls designed by Defendant to ensure Defendant's compliance with HMDA and Regulation C; the

9

CFPA; and the requirements of this Order;

    c. A mechanism to ensure that the Board is notified at least quarterly of the status of compliance actions; and

    d. Specific timeframes and deadlines, as appropriate, for implementation of the steps described herein.

34. Defendant will provide the Compliance Plan to the Bureau upon request.

## IV
## ROLE OF THE BOARD AND HMDA COMPLIANCE SUBCOMMITTEE

35. Defendant's Board has the ultimate responsibility under this Order for ensuring that Defendant complies with the laws that the Bureau enforces and this Order.

36. The Board and the HMDA Compliance Subcommittee must review all plans and reports required by this Order, and the Board and the HMDA Compliance Subcommittee must review each submission to the Bureau prior to such submission.

37. Within 5 days after the first anniversary of the Effective Date, Defendant must submit to the Supervision Director an accurate written compliance progress report ("Compliance Report") that has been approved by the Board and the HMDA Compliance Subcommittee, the accuracy of which is sworn to under penalty of perjury, and which, at a minimum:

    a. Describes the steps that Defendant's Board and HMDA Compliance Subcommittee have taken to reasonably assess whether Defendant is complying with the Compliance Plan, and each applicable paragraph and subparagraph of the Order;

    b. Describes in detail whether and how Defendant has complied with the Compliance Plan, and each applicable paragraph and subparagraph of the Order, including the manner of verification of such compliance and any corrective actions taken to

     remedy potential non-compliance with the applicable requirement, paragraph, or

     subparagraph; and

    c.  Attaches a copy of each Order Acknowledgment obtained under Section VIII,

       unless previously submitted to the Bureau.

38.   Defendant's Board and the HMDA Compliance Subcommittee must:

    a.  Authorize whatever actions are necessary for Defendant to assess whether

       Defendant is complying with the Compliance Plan, and each applicable paragraph

       and subparagraph of the Order;

    b.  Authorize whatever actions, including corrective actions, are necessary for

       Defendant to fully comply with the Compliance Plan, and each applicable

       paragraph and subparagraph of the Order; and

    c.  Require timely reporting by management to the Board and the HMDA Compliance

       Subcommittee to the extent required by this Order on the status of compliance

       obligations.

## MONETARY PROVISIONS

### V
### Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

39.   Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of

law alleged in the Complaint, Defendant must pay a civil money penalty of $3.95 million to the

Bureau.

40.   Within 10 days of the Effective Date, Defendant must pay the civil money penalty by wire

transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

41.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

42.     Defendant, for all purposes, must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendant may not:

  a.   Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

  b.   Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

## VI
## Additional Monetary Provisions

43.     In the event of any default on Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of entry of judgment to the date of payment, and will immediately become due and payable.

44.     Defendant relinquishes all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendant.

45.     The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any subsequent action by the Bureau to enforce the Order or its rights to any payment or monetary judgment under the Order.

46.     Defendant acknowledges that its Taxpayer Identification Number, which Defendant previously submitted to the Bureau, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

47.     Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendant must notify the Supervision Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been paid or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant may not argue that Defendant is entitled to, nor may Defendant benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this Order.

## ADDITIONAL PROVISIONS

### VII
### Reporting Requirements

**IT IS FURTHER ORDERED** that:

48.     For 5 years following the Effective Date, Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including, but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or

insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, but in any case, no longer than 14 days after the development.

49.    Within 7 days of the Effective Date, Defendant must:

      a.   Designate at least one telephone number, email address, physical address, and postal address as points of contact that the Bureau may use to communicate with Defendant regarding all aspects of this Order;

      b.   Identify each business for which Defendant is the majority owner, or that Defendant directly or indirectly controls, that performs any activity subject to HMDA or Regulation C by its name, telephone number, and physical, postal, email, and Internet address (to the extent such business maintains a website); and

      c.   Describe the activities of each such business identified in accordance with the immediately prior subparagraph, including the products and services offered, and the means of advertising, marketing, and sales.

50.    Defendant must report any change in the information required to be submitted under Paragraph 48 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

## VIII
### Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

51.    Within 7 days of the Effective Date, Defendant must submit to the Supervision Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

52.     Within 30 days of the Effective Date, Defendant must deliver a copy of the Complaint and this Order to each of its Board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

53.     For 5 years from the Effective Date, Defendant must deliver a copy of the Complaint and this Order to any business entity resulting from any change in structure referred to in Section VII, any future Board members and executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

54.     Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001-7006, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

55.     Ninety days from the Effective Date, Defendant must provide the Bureau with a list of all persons and their titles to whom this Order has been delivered under this Section and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 52.

## IX
## Recordkeeping

**IT IS FURTHER ORDERED** that:

56.     Defendant must create and retain the following business records for 5 years following the Effective Date:

> a. All documents and records necessary to demonstrate full compliance with the Compliance Plan and each provision of this Order, including all submissions to the Bureau, all approvals by the Board and HMDA Compliance Subcommittee related

15

to the Order, and all minutes of HMDA Compliance Subcommittee meetings related to the Order;

b.  All documents and records necessary to demonstrate internal and external audit reviews, testing, and findings related to HMDA reporting;

c.  All documents and records necessary to demonstrate internal and external audit's reporting of its findings to the HMDA Compliance Subcommittee related to HMDA reporting;

d.  All documents and records necessary to demonstrate the HMDA Compliance Subcommittee's resolution for each finding related to HMDA reporting reported to it by any internal and external audit or any other source; and

e.  All reports documenting implementation and adherence to the Compliance Plan.

57.   All documents and records initially prepared electronically must be maintained in their original electronic format. Data should be centralized and maintained in such a way that access, retrieval, auditing, and production are not hindered.

58.   Defendant must make the documents identified in Paragraph 56 available to the Bureau upon the Bureau's request.

**X**
**Notices**

**IT IS FURTHER ORDERED** that:

59.   Unless otherwise directed in writing by the Bureau sent to Defendant at its principal place of business (to the attention of Defendant's Chief Legal Officer), Defendant must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Freedom Mortgage Corporation*, Case No. 9:23-cv-81373" and send them by email to Enforcement_Compliance@cfpb.gov addressed as follows:

ATTN: Supervision Director
Consumer Financial Protection Bureau
Office of Supervision Policy

## XI
### Compliance Monitoring

**IT IS FURTHER ORDERED** that:

60.     Within 14 days of receipt of a written request from the Bureau, Defendant must submit additional compliance reports or other requested information related to this Order or any activity required under this Order, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

61.     Defendant must permit Bureau representatives to interview any employee or other person affiliated with Defendant who has agreed to such an interview regarding: (a) this matter; (b) anything related to or associated with the conduct described the Complaint; or (c) compliance with this Order. The person interviewed may have counsel present.

62.     Nothing in this Order will limit the Bureau's lawful use of compulsory process under 12 C.F.R. § 1080.6.

## XII
### Transfer or Assignment of Operations

63.     Should Defendant seek to transfer or assign all or part of its operations that are subject to this Order, Defendant must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XIII
### Release

64.     The Bureau releases and discharges Defendant from any and all potential liability for claims arising out of the Lawsuit Subject Matter or the allegations of the Complaint, to the extent such conduct occurred before the Effective Date (except to the extent any such conduct is

intentional) and the Bureau knows about it as of the Effective Date. The Bureau may use the practices described in the Complaint in future enforcement actions against Defendant and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violations of this Order.

## XIV
## Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

65.    The Clerk of Court **SHALL CLOSE** this case.

66.    All pending motions are hereby denied as moot.

67.    The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

    **SIGNED** in Chambers, in West Palm Beach, Florida, this 25 day of June, 2024.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT COURT JUDGE

Cc: attorneys of Record